WHISTLER v. MacDONALD et al.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

No. 1,623.

SPECIFIC PERFORMANCE (§ 79*)—MINING PARTNERSHIP—RIGHTS OF PARTNERS.

Defendant and one of the complainants entered into a mining partnership by which such complainant purchased and paid for a mining claim for the benefit of the partnership, and defendant, who was also engaged in other business, agreed to prospect and acquire other claims, his partner to furnish supplies and money when needed, which he did. Subsequently, when they had acquired other claims, the second complainant was admitted to an equal share in the partnership on payment of $1,000, which was turned over to defendant, and with a part of which and by the exchange of other property of the partnership he purchased the interest of another in the claims in suit, which they had located jointly. Defendant afterward leased the claims on a royalty, and they proved valuable, whereupon he denied that they belonged to the partnership, and refused to account to complainants for any part of the royalty, although the evidence tended to show that he had previously recognized their interest therein. *Held*, that neither of the partnership contracts was within the statute of frauds, nor were they inequitable, being at will and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

terminable at any time by either party, but were specifically enforceable and embraced the claims in controversy.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 79.*]

Appeal from and in Error to the District Court of the United States for the Second Division of the District of Alaska.

The appellant appeals from a decree in which it was adjudged that he held the legal title to placer mining claim No. 5 on Wonder creek, and an undivided one-half interest in the placer mining claim known as "First Tier Bench. Right Limit on Wonder Creek," also known as the "Whistler Bench," in trust for a mining partnership consisting of himself and the appellees, and decreeing that he make the conveyances necessary to convey to the appellees each a one-third interest in said claims, and pay to the appellees their proportion of certain royalties derived by him from leases thereon. Upon the pleadings and the evidence, the court made the following findings of fact: That about the end of the year 1900, the appellee Macdonald purchased an undivided interest in a mining claim in the Second Division of the District of Alaska, at the instance of the appellant, with the understanding that the appellant should own one-half of the interest so purchased, and should look after the mutual interests of himself and said Macdonald; that at the same time the appellant agreed with said Macdonald that the latter should acquire other mining properties in the District of Alaska, and oversee, prospect, and develop the same, in all of which the said parties were to be equally interested, and Macdonald also agreed to furnish the appellant supplies, equipment, provisions, and money when needed, and to help him out in a general way, so that he would be able to attend to the mutual interests of himself and Macdonald when not attending to his own other business; that pursuant to that agreement, from that date on to June 16, 1903, Macdonald furnished everything to the appellant which the latter asked for, amounting in value to over $500; that this arrangement was to continue until the parties had made a little stake, or something to divide, after which they were to divide up, and thereafter remain together or separate, as they should agree; that by June 16, 1903, the appellant had acquired by location some eight claims in his own name and one in Macdonald's name; that during that period the appellant was also engaged in the business of photography on his own account; that in the fall of 1903 the appellant requested Macdonald to dispose of an undivided one-fourth interest in their partnership properties for the purpose of raising the sum of $800 with which to further develop their properties for the purposes of the partnership; that subsequently Macdonald represented to the appellee Carter the arrangement then existing between himself and the appellant, stating that the latter was to look after the properties then owned by himself and Macdonald, and to acquire other properties, and to oversee, prospect, and develop the same for their joint benefit as partners, and that if he, Carter, would contribute the sum of $800, it would be used for the purposes mentioned, and that Carter would be entitled to a one-fourth interest in their enterprise, as well in the properties already acquired as in whatever mining properties the appellant should thereafter acquire through the continuance of their arrangement; that Carter accepted the proposition, and forwarded the sum of $1,000, instead of $800; that on June 16, 1903, Macdonald handed to the appellant the said sum of $1,000, communicated to him the understanding between himself and Carter, to which the appellant agreed, accepted the $1,000, and further agreed with Macdonald to make Carter's interest an equal one-third interest instead of one-fourth, in view of the payment of $1,000 instead of $800; that during the year 1903, and in the years 1904 and 1905, in addition to the $1,000 paid in by Carter, Macdonald furnished further supplies, money, and its equivalent to the appellant, for the use of the enterprise, in the sum of $722; that in the early part of the year 1904 the appellant acquired the legal title to the properties in controversy herein—claim No. 5 on Wonder creek, and an undivided one-half interest in the mining claim known as "First Tier Bench, Right Limit on Wonder Creek," also known as "Whistler Bench Claim"; that the first of these claims was located by the appellant

and one Bayne, each having an undivided one-half interest therein, and that subsequently the appellant purchased Bayne's interest therein, and paid therefor $250 out of the $1,000 so paid in by Carter, the remainder of the consideration being the loss of an interest which the appellant had acquired in another of Bayne's properties, the title to which had been lost by the foreclosure of Bayne's mortgage thereon; that the appellant acquired a one-half interest in the Whistler Bench claim by a location thereof made by him jointly with another; that the appellant has made leases upon said two last claims, and royalties have become due from the lessees in the aggregate in the sum of $18,759.56, of which sum the appellant has received $6,083.06; that the appellant refuses to recognize the appellees as owners of any interest in said leased claims, and since the year 1905 has not requested Macdonald to make any further contributions under their agreement; that during the period from June 16, 1903, the appellant has been engaged in business for himself as a photographer. The records show that on September 10, 1903, the appellant joined with Macdonald in a conveyance to the appellee Carter of an undivided one-third interest in three mining claims.

John Rustgard, Campbell, Metson, Drew, Oatman & Mackenzie, and E. H. Ryan, for appellant.

Wm. Thomas, Mark L. Gerstle, Robert N. Frick, and Louis S. Beedy, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. (after stating the facts as above). The appellant contends that there was no valid binding contract of partnership, and that, if such a contract was made, it was so unfair and inequitable that a court of equity will not enforce it. Upon the evidence in the case we find no ground to question the correctness of the finding of the court below that the appellant and Macdonald, late in the year 1900, entered into a mining partnership. It is true that the testimony is not very definite as to the precise service each party was to contribute to the joint enterprise. Enough appears to show a general agreement by which Macdonald was to purchase an undivided interest in a certain mining claim for the benefit of himself and the appellant, and that the appellant was to acquire other mining properties in Alaska, to oversee, prospect, and develop the same for the joint benefit of himself and Macdonald, and that the latter was to furnish him supplies and money when needed, and that this agreement was carried out until the date when Carter became interested in the adventure. Prior to that date, the appellant and Macdonald had discussed and agreed upon the desirability of transferring an interest in the properties which they had acquired in order to raise money for development of the same. In pursuance of that understanding, on January 19, 1903, Macdonald wrote to Carter referring to the mining claims held by him and the appellant on joint account, and said:

"But just at present we are sorely in need of $1,000.00 to help have them thoroughly prospected. Do you want to take a flyer at that price for an undivided ¼ interest in the lot? He is to put in all his time and is doing so, while I keep working for our mutual benefit."

In a second letter to Carter of March 9, 1903, Macdonald wrote more at length, and, among other things, said:

"Think the matter over, and if you conclude to come in you know that at least you will get fair play in any good luck that may come our way. * * *

There are new finds and new districts opening up all the time so that I would consider you as owning ¼ of any new property that we may acquire."

Carter sent the $1,000 to Macdonald, and he turned it over to the appellant. The appellant wrote to Carter thanking him "very sincerely" for the $1,000, and for the confidence Carter had reposed in him by placing it at his disposal. The appellant and Macdonald agreed that Carter's interest should be one-third instead of one-fourth, and on September 10, 1903, the appellant and Macdonald joined in a deed to Carter of an undivided one-third interest in certain placer mining claims. On January 1, 1904, the two claims in controversy in this suit were located. Claim No. 5 on Wonder creek was located by the appellant and one Bayne. The claim known as "Whistler Bench" was located by the appellant and one Sturtevant. Bayne's one-half interest in the first claim was thereafter transferred to the appellant for $250 cash, and in further consideration of the loss of a one-half interest in another claim in which the appellant and Bayne had been jointly interested, but which had been lost through a mortgage made by Bayne. The appellant earnestly contends that in acquiring these properties he was acting on his own behalf, and not on behalf of the partnership. The trial court found otherwise, and, upon a consideration of the whole evidence, we think the finding is sustained. The appellant, it is true, was not bound by his promise to go on acquiring other mining properties for the benefit of the partnership. He could at any time have declined to proceed further in the acquisition of such properties, but he gave no notice of any such intention. The $250 which he paid Bayne was paid out of the money contributed by Carter. The remainder of the consideration for Bayne's interest was an equity accruing out of the loss of a claim on Dahl creek in which Bayne and the appellant had been jointly interested. That the interest in that claim, although standing in the appellant's name, had been held by him for the joint benefit of himself and the partnership, is indicated by the appellant's letter of December 9, 1903, in which he writes to Macdonald of his hope of getting money out of that claim for use in developing other properties of the partnership. As late as November 26, 1905, the appellant wrote to Macdonald about No. 5 on Wonder creek, saying:

"Some laymen are on it and they have got onto a little streak of gold-bearing gravel that may turn out good at any time. It would set me on my feet next spring and give me a fresh start and something to prospect our other ground with."

Macdonald testified that, after paying the appellant the money received from Carter, he did not again see the appellant until June, 1904, and that then he accused him of misappropriating the money, but that the appellant made an evasive answer and seemed excited and emotional, and that he, Macdonald, did not like to press him. He testified further that in September, 1906, he had a conversation with the appellant in which the latter admitted receiving $2,800 royalties on the lease, and said, "But I am not in a position to talk money now to either you or Carter," to which Macdonald replied, "That is all right. You know that I know that you are in a bad position, having your wife sick outside, and need all the money. We will wait until things

adjust themselves next year;" and that the appellant replied that he "would be able to next year." Macdonald testified that during the winter of 1907 he again took up the matter of these properties now in controversy by writing a letter to the appellant. In response, the appellant wrote:

"I am going to do just what I planned out in the first place as soon as I found it was likely to bring me in a little money, and that is to refund Carter his $1,000.00 until such time as we realize from some of our Kougarok claims, and to replace the $300.00 in the Bank of Commerce that I unfortunately drew out of yours in 1900. Had I owned the ground when I sold to you and Carter, it would have gone in with it. I made no reservations. When I went out and staked it, I hardly thought it was worth the $2.50 to record, and had it been a 160 acre tract or anything of that kind, both yourself and Carter would have been in it. If you look up your name in the recording books, they will prove it. If the claims had turned out good so much the better. Had I cut 25% royalty up into three, it would not mean a grub stake for anybody, so I do not intend to do it. By having a few dollars, I shall be in a better position to attend to our other properties."

This letter can only be regarded as an admission by the appellant that he had not dealt fairly with the appellees. Why should he offer to refund to Carter the money which he had contributed, and to Macdonald the original purchase price of the first claim in which they became jointly interested? According to his own version of the agreement, he was not only not indebted to either of the appellees in any sum whatever, but he was under no moral or equitable obligation to repay them any sum. His whole letter seems to suggest that he thought that he, through whose immediate services these two valuable properties had been acquired, ought in justice to be entitled to the benefit thereof, and that the other partners, who had not gone into the field nor incurred any of the hardships of prospecting, ought to be content to get back the money which they had paid in. That this was in his mind is foreshadowed by some of his previous letters, in which he referred to the work he had done and the privations he had endured. It is an attitude of mind which, we have had occasion to discover, is not infrequent with the grub stake prospector when the obligation of the grub stake contract is subjected to the strain which follows upon a rich discovery of mineral.

Neither the first nor the second partnership agreement was void as within the statute of frauds. Shea v. Nilima, 133 Fed. 209, 66 C. C. A. 263, and cases there cited. Nor is the case one in which equity should deny specific performance on the ground that the contract was inequitable or unfair. So far as the equities are concerned, the contract is not to be distinguished from a grub stake contract. The appellees did not contribute large sums of money, but it appears from the evidence that they did all that they contracted to do. Nor did the appellant contribute his whole time to the enterprise. He was carrying on other business at the same time. It was a partnership at will. The appellant could have terminated it at any time on giving notice to the other partners. He did not choose to do so, and the fact that while carrying out the partnership agreement he acquired mining claims of considerable value, far beyond the value of the sums contributed by the appellees, is no ground for denying specific perform-

ance. The appellant seeks to draw a parallel between this case and the case of Marks v. Gates, 154 Fed. 481, 83 C. C. A. 321, 14 L. R. A. (N. S.) 317, decided by this court. But that case differs essentially from this. It was a case in which, for a consideration of $1,000 and the cancellation of an old debt, one of the parties agreed to convey to the other a one-fifth interest in any and all property which he might thereafter at any time acquire by location, purchase, or otherwise in the territory of Alaska. It was sought under that agreement to obtain a decree for a one-fifth interest in property, valued at $750,000, "acquired by location, purchase, and otherwise." Specific performance was denied on the ground that the contract was vague, uncertain, and perpetual, and because its enforcement would be unconscionable.

There is no merit in the appellant's contention that relief should be denied because of the laches of the appellees. It was not until March 15, 1907, that the appellees had notice that the appellant intended to assert title to the mining claims in controversy adversely to them. The conversation had in the preceding September, so far from showing such an intention, is rather to be construed as an admission of a contrary purpose. The present suit was brought on May 9, 1907.

The decree is affirmed.