[No. 29916. Department One. July 18, 1946.]

A. C. Davis, *Respondent,* v. A. P. Alexander, *Appellant.*[1]

[1]Reported in 171 P. (2d) 167.

*Venables, Ballinger & Clark,* for appellant.

*James R. Chambers,* for respondent.

MILLARD, J.—In this suit in equity, which was brought to establish a special partnership by oral agreement between plaintiff and defendant to purchase and sell real estate, plaintiff prayed for dissolution of the partnership, for an accounting, and for recovery of his net share of the profits.

Defendant denied the agreement and pleaded as affirmative defenses: (1) payment of only claim plaintiff had against defendant; (2) invalidity of the agreement under the statute (Rem. Rev. Stat., § 5825 [P.P.C. § 577-3]), which provides that (a) every oral agreement that, by its terms, is not to be performed within one year from the making of the agreement, and (b) an oral agreement authorizing an agent to sell or purchase real estate for compensation, shall be void; and (3) that recovery on the claim for share of the profits from the sale of the real property in question is barred by the statute (Rem. Rev. Stat. (Sup.), § 159 [P.P.C. § 73-1]), which provides that an action upon an unwritten agreement, such as alleged by plaintiff, shall be commenced within three years.

Trial to the court resulted in findings, summarized as follows, which are in harmony with the allegations of the complaint and are amply sustained by the evidence:

Plaintiff was engaged in the business of buying and selling tax titles in Seattle

" . . . and was skilled in that business with a knowledge of properties available and knowledge of the value of properties of this kind and the sale of same at a profit."

In November, 1938, plaintiff and defendant entered into an oral agreement of special partnership in which it was agreed that plaintiff should select and bid in two pieces of tax title properties, designated herein as the Ashworth property and the Seashore property, from King county. It was agreed by the parties that title to the properties was to be taken in the name of defendant, who was to supply the money therefor and to furnish all money to pay assessments, taxes, and other expenses thereof and then resell the properties with the assistance of plaintiff, and defendant was to receive back the money he advanced with six per centum interest. The profits derived from the sales were to be divided equally between plaintiff and defendant.

Pursuant to the oral agreement, plaintiff selected and bid in, defendant furnishing the money therefor, the Ashworth property and the Seashore property. The net profits from the sale of the two properties amounted to $3,536.48 of which plaintiff was entitled to one half, less one hundred dollars paid on the account by defendant to plaintiff.

Decree was entered granting prayer of plaintiff and awarding him recovery in the amount of $1,668.24 against defendant, who has appealed therefrom.

It is a rule, which we have so consistently followed as to obviate the necessity of citation of sustaining authority, that, if there is evidence to support same, the trial court's findings will not be disturbed on appeal. The evidence, briefly, is as follows:

Respondent testified that, from 1917 to 1921, he was associated with three persons in Seattle in the purchase of certificates of delinquency. In that association, his duties were to visit the courthouse, select properties against which the taxes were delinquent, purchase certificates of delinquency, draw maps of the properties for submission to his three employers or associates, and check the records in the county treasurer's office.

Following the passage in 1921 of a resolution by the county commissioners to sell no more certificates of delinquency but to proceed with tax foreclosures themselves, respondent was engaged, until the year 1942, in tax title foreclosure business; that is, he purchased the properties for himself and for others on a partnership basis, thereby becoming familiar with the value and marketability of the property. From 1921 to 1942, he bought and sold approximately five hundred tracts. His procedure was to bid in the properties and assist in making sales of same by listing the properties with real estate firms.

In November, 1938, respondent discussed with appellant the subject of profits to be made in the purchase and resale of properties sold by the county for taxes. Respondent remarked to appellant that the latter was familiar with the experience of the former in this line of endeavor, and that, if appellant would supply the money, respondent would make the purchases. It was agreed that the profits derived from resales would be divided equally between the partners. Respondent further testified that he informed appellant he would draw plats of the properties to be sold by the county and would conduct appellant to the properties for inspection of same, and that, if satisfactory to appellant, respondent would bid in the property at the foreclosure sale. To this appellant agreed, "So I went ahead and selected properties, drew quite a number of plats."

From eight to twelve pieces of property were shown by respondent to appellant, who selected two tracts—the Seashore property and the Ashworth property. Respondent examined the record in the treasurer's office and obtained statements of the amount of taxes and assessments against the properties. Pursuant to his agreement with appellant, respondent bid in the two properties mentioned, paid the amount of his bid in each instance to the cashier in the county treasurer's office, and directed that official to show that the purchase was made by appellant. The deeds were mailed to appellant as directed by respondent, who, at the request of appellant, filed those deeds for record with the

county auditor. Respondent listed the two properties with four real estate firms for sale.

The Ashworth property was sold by a real estate agent. The last payment on the purchase price of that property was made November 15, 1944. The real estate agent and respondent went to appellant and obtained his signature on the earnest money receipt, which was followed by the contract of sale, which was signed by appellant. Prior to final payment on that contract by the purchaser, respondent requested appellant for a portion of the proceeds derived from the sale of the Ashworth property. Appellant gave to respondent one hundred dollars on account and stated that, when the final installment on the purchase price was paid, a computation would be made of the profits, and appellant would pay to respondent one half thereof.

In June, 1945, respondent discovered that appellant sold the Seashore property in December, 1943. Other than the amount of one hundred dollars received in 1944 from appellant, nothing has been received by respondent from the partnership.

Within a few days following receipt of information in June, 1945, that appellant sold the Seashore property in December, 1943, respondent commenced this action for dissolution of the partnership and for an accounting.

The testimony of the realtors with whom the properties were listed for sale corroborates respondent's testimony respecting the oral agreement with appellant. From that testimony, it is clear that appellant admitted to at least one realtor that respondent had an interest in the properties; that is, appellant admitted he had purchased the tax title properties through respondent, with whom he would divide the net profits from the sales.

Appellant testified that he never made any agreement with respondent. He further testified that respondent, as an act of friendship, showed tax title properties to him, and that respondent made a demand for two hundred fifty dollars as his share of profits from the sales but accepted from appellant one hundred dollars in full settlement of any claim respondent may have had against appellant.

██ The evidence on behalf of appellant is in conflict with the evidence adduced in favor of respondent, but it does not preponderate against the findings; therefore, the findings will not be disturbed.

Appellant invokes the rule that an oral agreement to purchase and sell land is in contravention of the statute of frauds (Rem. Rev. Stat., § 5825) and cannot, therefore, be enforced.

██ If one of two partners purchases land in his own name with partnership assets for partnership purposes, a trust results in favor of the partnership. *Case v. Seger,* 4 Wash. 492, 30 Pac. 646.

In the case at bar, respondent and appellant pooled their resources for the purpose of purchasing tax title property and reselling same, the profits from the sale of the properties to be equally divided between the partners. The skill of respondent in the business of buying and selling tax title property and his knowledge of property available and his knowledge of the value of such property were the resources, the assets, which he contributed to the partnership. The money was contributed by appellant.

██ The oral agreement in the case at bar is not one to transfer to respondent an interest in the land to be acquired, hence the agreement is not within the statute of frauds. The tax title properties were purchased for the benefit of the partnership by and with the pooled resources of appellant and respondent, the two partners, who agreed with each other that the properties were to be sold for the benefit of the partnership, and that the profits were to be equally divided between the partners after return to appellant of his investment plus interest thereon, notwithstanding the fact that the title to the real properties was taken in the name of appellant.

In *Case v. Seger, supra,* we held that a partnership agreement between two persons that they should be jointly interested in a speculation for the buying and improving of lands for sale may be proved without being evidenced in writing signed by, or by the authority of, the party to be charged therewith and "is not within the statute of frauds,

and such an agreement being proven," either of the partners may establish his interest in the land subject to the partnership without such interest being evidenced by any writing. That case affected specific real estate, the title to which at the time of the making of the agreement was not in the name of either of the partners and was acquired subsequently. The title to the land was taken in the name of one partner.

In *Case v. Seger, supra,* which is on all fours with the case at bar, we held that the agreement was valid and directed dissolution of the partnership and distribution of the partnership profits to the partners.

In *Smith v. Imhoff,* 89 Wash. 418, 154 Pac. 793, we held that a special partnership in real property is created where it is orally agreed that one party should purchase certain property and pay the cost of platting it, and that the other party to the agreement should forego his commissions, have the land surveyed, and sell it, the profits to be equally divided. Such an agreement, we held, is not within the provisions of the statute of frauds requiring such agreements to be in writing.

In the case cited, plaintiffs, who were engaged in the real estate business,—there is no showing they were licensed real estate brokers—had listed with them a certain piece of real property. Plaintiffs made an oral agreement with the defendant that the latter supply the money for the purchase of the real property in question and for its platting and subdividing, the property thereafter to be sold and the profits divided between plaintiffs and defendant. Defendant took the deed in his own name. The property was later sold at a profit, and plaintiffs brought an action to recover their portion of the profits derived from the sale. We held that the parties entered into a special partnership for the purchase and sale of real estate; that plaintiffs' foregoing of their commission of ninety dollars was an investment by plaintiffs of ninety dollars in the purchase price of the property, and that it was not necessary that the partnership agreement be in writing. We quoted with approval the following language from 20 Cyc. 237:

"It is generally held that agreements to share profits and losses arising from the purchase and sale of real estate are not contracts for the sale or transfer of interests in land and need not be in writing."

The case cited is indistinguishable from the case at bar. There the real property was acquired with the funds of the defendant partner, the deed taken in his name and the property sold at a profit. The other partners (plaintiffs) had the information and contributed their skill and assistance in buying and selling the property.

In *Froiseth v. Nowlin,* 156 Wash. 314, 287 Pac. 55, which was an action for the dissolution of a partnership and an accounting, we held that an oral agreement of partners for the purpose of buying and selling real estate, whereby lands were purchased and held in the name of one partner for profit and resale, is not within the statute of frauds; since the property, as between the parties, is considered as personal property. We quoted with approval 27 C. J. 220 to the effect that an oral agreement between two or more persons for joint acquisition of real property from a third person and not contemplating any sale or conveyance between the parties is not a contract for the sale of land within the meaning of the statute of frauds. We said:

" 'Where land is purchased for sale and profit, it may, in equity, be regarded as personalty as among the partners.' [47 C. J. 766.]"

"Here, we have a co-partnership formed by oral agreement for the purpose of buying and selling real estate, not just one tract, but generally any and all tracts or parcels that the partners might from time to time consider available for the exercise of their merchandising abilities and efforts. Property thus purchased, though the title be taken in the name of one partner only, becomes, in equity, merchandise for resale and therefore, as between the parties, personal property. The purpose is not to finally vest title in the partners according to their several interests, but to re-sell and divide the profits. If a re-sale had been made before dissolution of the partnership, equity would compel an accounting for the profits; and where, as here, there has been no re-sale, but the thing which equity regards as merchandise is left undisposed of, equity will divide what remains just

as it would decree the division of any other merchandise or asset of the partnership."

See, also, *Hatupin v. Smith,* 21 Wn. (2d) 132, 150 P. (2d) 675.

■ Appellant further contends that, as the oral agreement by its terms was not to be performed within one year from the making of the agreement, the agreement is void under the statute (Rem. Rev. Stat., § 5825). The statutory provision invoked by appellant is inapplicable; it does not apply to an oral agreement which is for an indefinite length of time and is terminable at will. *Sargent v. Drew-English, Inc.,* 12 Wn. (2d) 320, 121 P. (2d) 373. See, also, 37 C. J. S. 574.

■■ The argument of appellant that respondent acted as a real estate broker and, under the statute (Rem. Rev. Stat., §§ 8340-4, 8340-20), cannot recover because of the absence of a written agreement, is without merit. Respondent entered into a partnership for the acquisition and sale of real estate, hence he was not a real estate broker under the statutory definition (Rem. Rev. Stat., § 8340-4) that a real estate broker is one who deals in real estate for the purchase, sale, etc., or interest therein, for another person. Respondent was not working for another person. He was working for himself first and, second, for the partnership of which he was a member. The land of the partnership is regarded in equity as personalty, and, when either partner handled it, either in purchasing or selling, he was not dealing in real estate for another, he was representing the partnership and disposing of a real estate asset of the partnership the same as if it were personal property.

■ Appellant insists that there was a complete accord and satisfaction of respondent's claim. That contention is not sustained by the evidence. At the time appellant paid to respondent one hundred dollars, the latter's share of the profits from the sale of the Ashworth property was in excess of two hundred fifty dollars, the amount appellant testified respondent demanded. Respondent was not then aware of the fact that appellant had sold the Seashore

property. The trial court did not believe, nor do we, that respondent agreed to accept one hundred dollars in satisfaction of a total claim of approximately seventeen hundred dollars. In one breath appellant denies there was any contract of partnership to share profits, and in the next he insists that he paid one hundred dollars in satisfaction of all claims under that contract.

 Finally, appellant contends that respondent's claim for a share of the profits under the agreement is barred by the statute (Rem. Rev. Stat., § 159) which provides that an action upon a contract or liability, express or implied, which is not in writing and does not arise out of any written instrument, shall be commenced within three years after the cause of action shall have accrued.

A partner is ordinarily not entitled to maintain an action for an accounting during the existence of the partnership, therefore the statutory period of limitation does not begin to run against an action for an accounting prior to the dissolution of the partnership, or the exclusion of the complaining partner from participation in the affairs of the partnership. 47 C. J. 1207.

When he paid one hundred dollars to respondent on the profits from sale of the Ashworth property, appellant agreed to pay to respondent the remainder of his share of the profits on that deal when the purchaser of the Ashworth property paid the final installment under the contract of purchase. That contract was completed in 1944.

The Seashore property was sold in December, 1943. Respondent did not discover until June, 1945, that appellant had sold the Seashore property. There never was any accounting for the profits from that sale, nor was there any dissolution of the partnership, or exclusion of respondent from the partnership affairs until this action was instituted in July, 1945.

It is not material whether the agreement was one of partnership or a simple contract to share in the profits. In either event, the period of three years from December 6, 1943, when one property was sold and the period of three years from November, 1944, when the sale of the other

property was completed, had not expired when this action was brought.

We have examined all of the authorities cited and find they are either distinguishable from the case at bar or are in harmony with this opinion.

The judgment is affirmed.

BEALS, C. J., STEINERT, SIMPSON, and MALLERY, JJ., concur.

[1] Reported in 171 P. (2d) 173.