James A. WOOTEN, Plaintiff,

v.

Raymond W. MARSHALL, Defendant.

United States District Court
S. D. New York.

June 29, 1957.

Schwartz, Nathanson & Cohen, New York City, for plaintiff, Isadore H. Cohen, George H. Schwartz, Paul E. Gelbard, New York City, of counsel.

Harper & Matthews, New York City, for defendant, Harold Harper, Vincent P. Uihlein, New York City, of counsel.

FREDERICK VAN PELT BRYAN, District Judge.

This is an action upon an alleged agreement of joint venture concerning the purchase of a 160 acre tract of land located in Anchorage, Alaska and its resale. The complaint seeks a decree declaring that there was such a joint venture between the parties, establishing the rights of the plaintiff in the venture and compelling an accounting of the venture by the defendant.

The answer denies that there was an agreement of joint venture and alleges, by way of separate defenses, that the agreement between the parties is unenforcible under the Alaska and New York statutes of frauds.

Defendant now moves, pursuant to Rule 56, Fed.Rules Civ.Proc., 28 U.S.C.A. for summary judgment upon the sole ground that recovery is barred by these statutes of frauds. The motion is predicated upon the testimony of the plaintiff contained in his deposition taken by defendant before trial. For purposes of the motion these facts, as so testified to by the plaintiff, must be deemed to be true. They are as follows:

In 1947 plaintiff was president, and defendant was chairman, of the Board of Alaska Airlines, Inc. Plaintiff spent considerable time in Alaska and defendant for the most part remained in the United States.

In early June of 1947 plaintiff, while searching for a home in Alaska for his family, came across a 160 acre tract of land near Anchorage known as the Young Homestead. The property bordered on Cook Inlet. A portion of it on a bluff had a splendid view of the inlet and Mt. McKinley, and the balance, comprising the major portion of the property, was largely lowland.

Plaintiff ascertained that the property was owned by the heirs of the Young Estate who resided in Portland, Oregon, and it appeared to him that it could be purchased for $20,000 to $30,000. About 40% of the property was under lease to the Civil Aeronautics Authority which had several years to run.

Late in June 1947, when next in New York, plaintiff brought the property to defendant's attention, emphasizing the exceptionally attractive view from the bluff and the desirability of building a. home there. Both defendant and his

wife expressed a desire to view the property and defendant suggested that on his next trip to Alaska he might try to locate the Young heirs in Portland.

In August 1947 defendant, en route to Alaska with his wife, telephoned plaintiff from Seattle advising that he had located the Young heirs and arranged with plaintiff for their transportation to Alaska. Defendant and his wife then proceeded to Anchorage and plaintiff took them to see the property.

A number of discussions between the parties ensued, in some of which their wives participated. They talked of the possibilities of building homes for themselves on the bluff and of developing the balance of the property as sites for houses and apartments for Alaska Airlines personnel. There was a severe shortage of housing facilities in the area and plaintiff had already consulted an architect concerning a possible housing development on the property.

As a result of these discussions the parties agreed that they would offer the Young heirs $20,000 for the property, to be purchased on a 50-50 basis; that the choice footage on the bluff, which was only a comparatively small portion of the acreage, would be divided equally between them and would not be sold except for their own occupancy by either without a first offering to the other; that the balance of the tract would be developed and exploited for the joint account of the parties; and that the profits and losses would be shared equally. There was no definite understanding as to what roles the respective parties would take in furtherance of the enterprise, but it was understood that each would communicate to the other with respect to any possibilities for exploitation and profit that might appear.

In the meantime two of the Young heirs arrived in Alaska and the parties jointly undertook negotiations with them for the purchase of the property for $20,000, informing them that they intended to purchase it on a partnership basis. The offer was tentatively accepted subject to the approval of the other Young heirs.

At the close of the summer, before defendant left for the United States, it was understood that he would stop in Portland to close the deal. Plaintiff tendered defendant his check for $10,-000, but defendant declined it stating that if he needed the money when the deal was closed he would call upon the plaintiff for it. This was quite satisfactory to plaintiff who had been arranging to borrow the money to cover his share of the purchase price, and who also was in the process of making arrangements with defendant for the purchase from him of a substantial block of Alaska Airlines stock.

In September 1947 defendant closed the deal for the property, paid the full purchase price of $20,000, and received a deed to the property solely in his own name.

On October 30th plaintiff wrote to defendant as follows:

"I was quite surprised when I examined the warranty deed and found it is made out only in your name and not in our joint names. Does this mean I am no longer in this deal? I can let you have my check for $5,000 and I will sign a note for the other $5,000 to mature within one year if this is satisfactory. You may hold the joint deed as security and this should certainly be protection enough for this loan. May I hear from you?"

Three days later defendant sent a memorandum to plaintiff stating:

"I have your memo of October 30.

"I have paid the full price for the Young property and it is my understanding that whatever profits accrue they are to be divided equally between you and me. However, if the investment should remain open for a considerable period of time I feel that an interest charge would be proper.

"If you would prefer some other plan please do let me know."

After this exchange plaintiff saw defendant again in New York. Defendant told plaintiff that if the property were not disposed of within two or three years, and he had to carry it for any length of time he thought he was entitled to interest. However, if plaintiff paid his half of the purchase price within a couple of years there would be no interest charge. Plaintiff agreed to this arrangement.

At various times the plaintiff engaged and paid architects and surveyors for services in connection with the property and went to the property with them, participated in hearings with respect to tax assessments on the property, and exhibited the property to potential buyers. He also met with Civil Aeronautics Authority representatives several times with respect to the cancellation of its lease, and with respect to possible condemnation of the property. At one point he received an offer of $50,000 for the property and transmitted it to the defendant, though the offer turned out to be ephemeral. On July 15, 1948 plaintiff received a telegram from Aeronautical Radio, Inc. regarding a proposed lease for a transmitter station on the property. In December 1948 defendant wrote to plaintiff as follows:

"Referring to proposed contract with the Aeronautical Radio, Inc. and your telegram of July 15, 1948, will you kindly advise me at your convenience whether we have a deal with that company, and if so what are the terms and when do they make the payments."

Nothing came of this. In November 1949, when plaintiff left Alaska Airlines, defendant told him that it would be unnecessary for him to pay his $10,000 share of the purchase price since he would need his capital for a new venture and that they could take the matter of this payment up at a later date, provided that the property had not been liquidated in the meantime. Shortly thereafter plaintiff left for the Middle East where he spent much of his time for the next two years.

In the fall of 1952 plaintiff was informed that defendant had sold a portion of the property for $125,000 to the Anchorage School District. Later defendant conveyed certain easements in the property to the Alaska Roads Commission for considerations which do not appear.

After plaintiff learned of the School District sale he saw defendant and asked for his share of the profits. Defendant agreed he was entitled to a division of the profits but refused to pay until plaintiff straightened out alleged debts he owed Alaska Airlines. Other demands by plaintiff from time to time for payment of his share were refused by defendant on various pretexts and in 1954 defendant finally made it plain that he would not pay plaintiff without litigation. Plaintiff then brought the present action.

On this motion defendant urges that, assuming these to be the facts, plaintiff is barred from recovery as a matter of law. He contends first that the agreement between the parties, as it appears from plaintiff's testimony, is not one for a joint venture as the complaint alleges but for the purchase and division of real property or the transfer of an interest therein, and therefore comes within the statutes of frauds pleaded as a defense. Secondly, defendant argues that the only writings which it appears were exchanged between the parties are insufficient to satisfy the requirements of the statutes since they fail to contain the elements of the true agreement between the parties and are therefore unenforcible.

Neither side goes into the question of whether the Alaska or New York statute of frauds applies.[1] However, since the statutes in both jurisdictions and the holdings and reasoning of the cases interpreting them, in so far as they relate

---

[1] Compiled Laws of Alaska (1954) §§ 58-2-2, 58-2-4; New York Real Property Law, McK.Consol.Laws, c. 50, §§ 242, 259.

to this situation, are substantially the same, it is unnecessary to determine this question at this stage.

In order to ascertain whether the agreement between the parties falls within these statutes, the nature of the agreement as it appears from the presently uncontradicted facts now before me must be considered. Is this an agreement of joint venture as alleged in the complaint and urged by the plaintiff, or is it merely an agreement for the purchase and division of real property or the transfer of an interest therein, as defendant asserts?

■■■ A joint venture or enterprise is, in essence, an informal partnership between two or more persons for a limited undertaking or purpose. A joint venture "exists when two or more persons combine in a joint business enterprise for their mutual benefit, with an express or implied understanding or agreement that they are to share in the profits or losses of the enterprise, and that each is to have a voice in its control and management." Chisholm v. Gilmer, 4 Cir., 81 F.2d 120, 124, affirmed on other grounds 299 U.S. 99, 57 S.Ct. 65, 81 L.Ed. 63; Ross v. Willett, 76 Hun 211, 213, 27 N.Y.S. 785; Forman v. Lumm, 214 App. Div. 579, 583, 212 N.Y.S. 487; National Comics Publications v. Fawcett Publications, D.C.S.D.N.Y., 93 F.Supp. 349, 357. No particular form of expression is required to create such an agreement apart from the requirements generally applicable to simple contracts. Whether or not parties have entered into this relationship will be ascertained both from their spoken and written words and from their acts and conduct. In re Taub, 2 Cir., 4 F.2d 993.

■■ The joint venture need not relate to commercial business or to dealings in personal property. It may be formed as well for the purchase and resale of land and the sharing of profits or losses in such a transaction. Mattikow v. Sudarsky, 248 N.Y. 404, 162 N.E. 296; Traphagen v. Burt, 67 N.Y. 30; Chester v. Dickerson, 54 N.Y. 1; Babcock v. Reed, 99 N.Y. 609, 1 N.E. 141; King v. Barnes, 109 N.Y. 267, 16 N.E. 332;

Dayvault v. Baruch Oil Co., 10 Cir., 211 F.2d 335; 2 Corbin on Contracts, § 411. Agreements for such a joint venture do not come within either the New York or the Alaska statutes of frauds and are not void or unenforcible. The real property acquired and dealt with by the venturers takes on the character of personal property as between the partners in the enterprise, and hence is not covered by these statutes. New York—Mattikow v. Sudarsky, supra; Traphagen v. Burt, supra; Fairchild v. Fairchild, 64 N.Y. 471; Chester v. Dickerson, supra; Dayvault v. Baruch Oil Corp., supra; Alaska—Cascaden v. Dunbar, 9 Cir., 157 F. 62; Hendricks v. Morgan, 9 Cir., 167 F. 106; Whistler v. MacDonald, 9 Cir., 167 F. 477; Stamey v. Hemple, 9 Cir., 173 F. 61.

■ Moreover, if, in the course of such a venture, title to property of the venture is placed in the name of one of the co-venturers, a fiduciary relationship is created to which the venturer having title owes the highest degree of honor and good faith. Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1; Mattikow v. Sudarsky, supra; Dayvault v. Baruch Oil Corp., supra. In the classic language of Judge Cardozo in the Meinhard case such a fiduciary is held to "the punctilio of an honor the most sensitive," as to which "there has developed a tradition that is unbending and inveterate", which "will not consciously be lowered" by this court. 249 N.Y. at page 464, 164 N.E. at page 546.

■ It is true that parties desiring to enforce oral contracts for the conveyance of land will not be permitted to spell out joint ventures or partnerships which would not otherwise exist merely to escape the bar of the statute of frauds. See Weisner v. Benenson, 275 App.Div. 324, 89 N.Y.S.2d 331, affirmed 300 N.Y. 669, 91 N.E.2d 325; Rizika v. Kowalsky, 207 Misc. 254, 138 N.Y.S.2d 711, affirmed on opinion below, 285 App.Div. 1009, 139 N.Y.S.2d 299. However, if the elements of joint venture are present the courts will not be slow to impose upon the parties the high standards of con-

duct laid down by Judge Cardozo in the Meinhard case, and will effectuate complete justice between the parties to the venture. Dayvault v. Baruch Oil Corp., supra; Mattikow v. Sudarsky, supra; 150 A.L.R. 1032, annotation.

■ The question before this court on this motion is therefore a simple one. Are the facts admitted to be true by defendant for purposes of the motion sufficient to create a triable issue as to whether there was a joint venture between the parties as alleged in the complaint. If there was such a joint venture it is plain that the statutes of frauds pleaded by defendant do not apply and there is, at the least, a triable issue. If, on the other hand, the agreement between the parties is merely one for the conveyance of lands it is covered by the statutes and the question remains whether the writings in the record are sufficient to comply with the statutes.

It seems plain that plaintiff's as yet uncontradicted testimony shows that these parties entered into an oral agreement for a joint venture concerning the purchase, exploitation and eventual disposition of this 160 acre tract. Plaintiff was the finder of the property and first called its advantages and possibilities to the attention of the defendant. With those advantages and possibilities in view the parties entered into an agreement which provided that the property would be purchased on a share and share basis, that it would be disposed of to their mutual advantage, and that the profits, losses and expenses would be divided equally between them. Plaintiff expended time, effort and money in furtherance of the objects of the enterprise by ascertaining the names of those who had title to the property, by arranging with the defendant for their visit to Alaska, by actively participating, if not taking the lead, in the negotiations for the purchase, by consulting an architect and employing him to make sketches, by having the property surveyed, by negotiating with respect to taxes and with respect to a lease which encumbered the property, and by dissuading a government agency from condemning it. Some of this was done, even before the agreement with respect to the purchase on a joint basis was entered into, and at that time the plaintiff already had a stake in the venture.

When the deal was closed with the owners and defendant took title to the property in his own name and paid the purchase price, these steps were taken pursuant to defendant's agreement with the plaintiff that it was to be brought on a 50-50 partnership basis. Indeed, the plaintiff sought to pay his one-half share of the purchase price prior to the closing of title and when he tendered his check for this sum to defendant it was returned by the defendant with the understanding that the venture was in full force and effect, and that it was unnecessary for him to contribute his share at that time, though he would be charged interest if the property were not turned over within a reasonably short period. This was again confirmed by defendant after he had taken title in his own name.

True, the respective functions of the co-venturers were not defined by their agreement. But it was understood that each from time to time would bring opportunities or contacts which might be beneficial to the venture to the attention of the other. In fact, plaintiff transmitted one such offer to the defendant in which the defendant manifested interest. Defendant, on the other hand, sold portions of the property at a large profit without notice to the plaintiff or consultation with him. Even if the agreement was indefinite as to the details of operation, this does not impair it as long as the essential elements of a joint venture have been established as they have here. Antoniades & Mitrou v. Pan American Petroleum & Transport Co., D.C.S.D.N.Y., 43 F.2d 664; In re Taub, supra.

Defendant argues that the major objective of the parties was to acquire sites on the bluff portion of the property on which to build homes, and that all else was merely incidental to that objective. He therefore contends that this was a

simple agreement for the purchase of real estate or for the transfer of interest therein, and that what plaintiff is really seeking by this action is the specific performance of such an agreement to transfer to him a portion of the Young homestead, title to which had been acquired by defendant. This construction of the agreement is belied by the evidence thus far presented to the court. Nor is this the relief which plaintiff seeks.

While the parties considered the possibility of using the bluff portion of the property as prospective home sites for themselves, that was only a part of the agreement between them. Indeed, the portion of the property which was considered for this purpose was only a small portion of the whole. The fact that one element of the agreement related to the home sites does not change its character for the agreement plainly contemplated that the parties would take advantage of the acute housing shortage in Alaska in the Anchorage area to exploit and develop the balance and by far the largest portion of the property, and to dispose of it on a mutually profitable basis. Plaintiff, who has long since given up any thought of building a home on the property, does not seek a conveyance of any part of the land. He asks for an accounting of the sales that have taken place which, for all that appears, may have included all or part of the prospective "homesites".

The joint venture alleged in the complaint is supported not only by the oral agreement and its modifications, as testified to by the plaintiff, but also by the consistent acts and conduct of the parties. Moreover, on the facts as they thus far appear, plaintiff placed his trust and confidence in the defendant as he was entitled to do, and the defendant grossly abused the trust reposed in him. These facts standing by themselves would establish that the agreement between the parties is one of joint venture and therefore not within the statutes of frauds pleaded. The defendant is, of course, entitled to present his own version of the facts and this may put the case in quite different posture. But his motion for summary judgment is devoid of merit.

Since this view of the evidence relied on by the moving defendant disposes of the motion, it is unnecessary at this juncture to pass upon defendant's contention that the writings evidencing the agreement do not satisfy the statutes of frauds pleaded.

Defendant's motion for summary judgment is denied.