[No. 40971-9-I.    Division One.    November 23, 1998.]

TED DUCKWORTH, *Appellant*, v. JAMES LANGLAND, ET AL.,
*Respondents*.

*Mark S. Davidson* and *Margaret A. Sundberg* of *Williams, Kastner & Gibbs, P.L.L.C.*, for appellant.

*Richard H. Skalbania, Michael M. Suga*, and *Juliane S. Rossiter* of *Stanislaw, Ashbaugh, L.L.P.*, for respondents.

BAKER, J. — Ted Duckworth appeals the summary judgment dismissal of his claims for an accounting, share of profits and land conveyance from an alleged partnership with James and Lucille Langland dba LB Construction, and Langland Homes, Inc. (Langlands). Duckworth also appeals the trial court ruling excluding a pre-lawsuit letter from James Langland as a "settlement offer." The Langlands cross-appeal the trial court's order denying attorney fees for Duckworth's lack of "substantial justification" in filing a lis pendens in connection with this case.

We affirm exclusion of the pre-lawsuit letter as a settlement offer, but hold that the alleged oral partnership is not barred by the provisions of the statute of frauds barring

oral agreements which require the transfer of an interest in real estate, or which can not be performed within one year. We thus reverse the summary judgment.

## FACTS

Ted Duckworth is a real estate broker. The Langlands are in the business of developing real estate. Duckworth had been a friend of Jim and Lucille Langland for about 15 years before the dispute which led to the instant case. In January 1993 Duckworth contacted the Langlands about Cambridge Court, a $350,000 parcel in Kirkland that was available for development. Duckworth and the Langlands discussed the possibility of a partnership. After later discussion, which Duckworth claims led to a verbal agreement to acquire and develop the property, sharing equally in any profits, Duckworth paid an earnest money deposit of $10,000 for the property. From February to April 1993, Duckworth paid an additional $19,559 in fees to obtain approval for the project. Engineering approval was granted in June 1993.

In April 1994 the Langlands paid $10,000 of the $70,000 down payment for the property and borrowed an additional $20,000 from a source that is not disclosed in the record, but which Duckworth characterizes as "partnership borrowings." Duckworth paid the remaining $30,000 of the down payment. In July 1994 the plat was completed and the lots were placed in the name of LB Construction. Duckworth was to have served as the listing agent on the sale of the developed lots.

Duckworth alleges a verbal modification to the agreement occurred: instead of selling the developed lots, it was decided that Langland Homes, Inc. would build homes on 10 of the 11 lots. Duckworth would serve as listing agent for the sales of the homes. During construction of the first home, Langland Homes was unable to pay its subcontractors and Duckworth lent $10,000 for the completion of the first home, which was repaid upon its sale. During construc-

tion of the second home, Langland Homes was again unable to pay its subcontractors and Duckworth lent another $10,000, which was repaid upon sale of that home.

Duckworth's connection to the project was referenced in five of the sales agreements for the houses, each of which James Langland signed. Although the exact nature of Duckworth's participation was not detailed, the sales agreements indicated his "financial interest," "involvement," or "investment" in the development.

The tenth home was sold in October 1996, and Duckworth requested an accounting. Jim Langland sent the following letter on November 11, 1996:

> Hi Ted,
>
> Just a quick note to see if you have reached a decision.
>
> Per our recent discussion, I'd like to know if you would prefer to receive a check in the amount of $35,000 or, would you like to purchase Lot 8 for $50,000
>
> Please give me a call by Thursday, Nov 14th. If we do not hear from you, we'll assume that you do not want the lot and will send you a check for $35,000.
>
> Best Regards, /s/ - /Jim/

Duckworth believed he was due more than $35,000, and again requested an accounting. When Langland refused, Duckworth filed this suit.

## DISCUSSION

### A. Exclusion of the November 11 letter as an offer of settlement

■ The Langlands successfully moved to strike the November 11 letter as an inadmissible offer of settlement under ER 408, as well as all of Duckworth's references to that letter in his declaration in response to the Langland's motion for summary judgment. Trial courts have broad discretion in ruling on evidentiary matters and will not be

overturned on appeal absent a manifest abuse of discretion.[1]

In his deposition, Duckworth testified he was aware the Langlands disputed the existence of the partnership and that the letter was an attempt to purchase his half of the partnership for $35,000. Duckworth also testified that taking the $35,000 would force him to "give up any claim that [he] had to profits of the development," and that he "rejected this settlement offer." Given that testimony, the trial court did not abuse its discretion in ruling that the letter was inadmissible.

B.  Oral partnerships and the Statute of Frauds

A moving party is entitled to summary judgment when there is no genuine issue as to any material fact, as demonstrated by the pleadings, affidavits, depositions, and admissions on file.[2] The moving party has the burden of showing that "there is no genuine dispute as to any material fact," and "reasonable inferences from the evidence must be resolved against the moving party."[3] Such motions should be granted only if a reasonable person could reach but one conclusion from all the evidence.[4] Appellate courts reviewing summary judgments engage in the same inquiry as the trial court (i.e., de novo).[5]

In connection with summary judgment dismissal of alleged oral agreements, this court has adopted the reasoning of the Supreme Court of Alaska, stating that:

> Oral contracts are often, by their very nature, dependent

---

[1]*Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 662-63, 935 P.2d 555 (1997) (citing *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 926, 792 P.2d 520, 7 A.L.R.5TH 1014 (1990)).

[2]CR 56(c); *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991)).

[3]*Folsom*, 135 Wn.2d at 663 (citing *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979)).

[4]*Folsom*, 135 Wn.2d at 663 (citing *Lamon*, 91 Wn.2d at 350).

[5]*Folsom*, 135 Wn.2d at 663 (citing *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994)).

upon an understanding of the surrounding circumstances, the intent of the parties, and the credibility of witnesses. If a dispute exists with respect to the terms of the oral contract, then summary judgment is not appropriate. Instead, the trier of fact in a trial setting should make the final determination with respect to the existence of the contractual agreement.[6]

Thus, we first consider whether there are disputed issues of material fact as to the terms of the alleged oral partnership.

1. Duckworth's declaration in response to the Langlands' motion for summary judgment

The Langlands argue that Duckworth attempts to create a genuine issue of material fact by contradicting his verified complaint with his declaration in response to the motion for summary judgment. Duckworth's complaint avers that he had an agreement with the Langlands which requires the transfer of the eleventh lot in the development as part payment for his profits in the partnership. Duckworth's declaration states that the original oral agreement was "subsequently modified" to include that transfer of land. The Langlands claim that the alleged original agreement was not subsequently modified and should be invalid under the statute of frauds because it requires the transfer of land or is, by its terms, incapable of performance within one year.

This court has held that:

When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such

---

[6]*Garbell v. Tall's Travel Shop, Inc.*, 17 Wn. App. 352, 354, 563 P.2d 211 (1977) (question of fact existed as to the terms of an oral bonus agreement) (quoting *Howarth v. First Nat'l Bank*, 540 P.2d 486, 490 (Alaska 1975) (further stating that both oral and written contracts are capable of resolution on summary judgment if there are no factual disputes), *aff'd on reh'g*, 551 P.2d 934 (Alaska 1976)); *see also Crown Plaza v. Synapse Software Sys.*, 87 Wn. App. 495, 501, 962 P.2d 824 (1997) (citing *Garbell*, 17 Wn. App. at 354, for the proposition that disputes about oral agreements depend a great deal on the credibility of witnesses).

an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.[7]

Duckworth's declaration is arguably inconsistent with his pleadings, but his statements are not directly contradictory. Because this is a summary judgment appeal, we do not weigh the parties' credibility but resolve all reasonable inferences in favor of the nonmoving party. We must accept Duckworth's characterization of the agreement, including the contention that it was subsequently modified.

2.  Land transfer provisions of the Statute of Frauds in connection with oral partnerships to develop and resell real estate

■ The Langlands' summary judgment motion argues that any partnership agreement is invalid under the statute of frauds if it requires the transfer of an interest in real estate. The statute of frauds applicable to real property states, in relevant part: "Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed,"[8] and "[e]very deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."[9] There are no such deeds in the instant case.

In *Malnar v. Carlson*[10] our Supreme Court held that the statute of frauds does not apply to oral agreements of partners who purchase and resell real estate, even where the real estate is purchased and held in the name of one partner for profit and resale. Such agreements are not

[7]*Marshall v. AC&S Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989) (quoting *Van T. Junkins & Assocs., Inc. v. United States Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

[8]RCW 64.04.010.

[9]RCW 64.04.020 (footnote omitted).

[10]*Malnar v. Carlson*, 128 Wn.2d 521, 533, 910 P.2d 455 (1996) (plaintiff alleged an oral partnership to purchase, develop, and resell real estate, and to share in the profits thereof).

contracts for the sale of, or transfer of interests in, land and do not need to be in writing.[11] The *Malnar* court specifically noted that "[t]he partnership did not involve the transfer of the land from one of the partners to another[.]"[12] *Malnar* left unanswered the rule of law in such cases.

In *Wooten v. Marshall*[13] the plaintiff in a partnership accounting action located 160 acres near Anchorage, Alaska, which the defendant purchased entirely with his funds and in his name.[14] The defendant had declined the plaintiff's tender of a $10,000 check as unnecessary to close the deal, and later agreed to defer the plaintiff's payment.[15] The defendant subsequently sold portions of the property at a profit and without notice to the plaintiff.[16] The plaintiff sued for an accounting and the defendant moved for summary judgment under the statute of frauds, claiming that the agreement required the transfer of real estate.[17]

Before purchasing the property, the *Wooten* parties had agreed to reserve and equally divide a portion of land located on a bluff, as well as to equally share in the profits and losses of the remainder.[18] The *Wooten* court noted that the real property acquired in such joint ventures generally takes on the character of personalty between partners.[19] The court also noted that the bluff property was a small portion of the whole, that the nature of the agreement was for the parties to mutually benefit from exploiting and

---

[11]*Malnar,* 128 Wn.2d at 533 (citing *Davis v. Alexander,* 25 Wn.2d 458, 463-66, 171 P.2d 167 (1946) (stating that land purchased for sale and profit may be equitably regarded as personalty among partners)).

[12]*Malnar,* 128 Wn.2d at 534.

[13]*Wooten v. Marshall,* 153 F. Supp. 759 (S.D.N.Y. 1957).

[14]*Id.* at 760-61.

[15]*Id.* at 764.

[16]*Id.*

[17]*Id.* at 760, 762.

[18]*Id.* at 761.

[19]*Id.* at 763.

developing "the largest portion of the property," and reversed summary judgment.[20]

We find merit in the logic of the *Wooten* opinion. The largest portion of the property in this case, 10 out of 11 lots, was platted, developed and sold. Duckworth's alleged interest in the eleventh lot is best characterized as a personalty interest in the partnership. We do not reach the merits of Duckworth's claims in this summary judgment appeal, but Duckworth may be entitled to an accounting and a share of profits in the partnership. The existence and ultimate manner for payment of that personalty interest is a matter for the finder of fact.

3. One year performance provisions of the statute of frauds in connection with oral partnerships to develop and resell real estate

■ The Langlands' summary judgment motion also argues that the alleged partnership agreement is invalid under the statute of frauds because it cannot be performed within one year. RCW 19.36.010 states:

> In the following cases . . . any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof . . . .

But where, as in *Malnar* and this case, an oral partnership is for an indefinite length of time and terminable at will, this provision is inapplicable.[21] Applying RCW 19.36.010 to such agreements seems illogical due to the very nature of partnerships, which are frequently ongoing and evolving business relationships. For example, the agreement in the instant case may have evolved from a deal to plat a piece of land to an agreement to build homes on developed lots.

---

[20]*Id.* at 764-65.

[21]*Malnar,* 128 Wn.2d at 533-34; *Davis,* 25 Wn.2d at 466 (statute of frauds in oral partnership to purchase and sell land "does not apply to an oral agreement which is for an indefinite length of time and terminable at will").

██ ██ Moreover, the *Malnar* court cited JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 19-18 (3d ed. 1987), as follows: "[I]f, by its terms, performance is possible within one year, however unlikely that may be, the agreement is not within the statute of frauds; and it is also legally immaterial that the actual period of performance exceeded one year[.]"[22] In the instant case, engineering approval was granted within six months of the earnest money deposit. Given enough resources and personnel, there is nothing in the terms of the agreement that makes performance impossible within one year.[23] It is legally immaterial that purchase and platting was finally completed one year later, or that the last home was completed and sold three and a half years later. RCW 19.36.010 is inapplicable here.

C.   The Langlands' request for attorney fees under the lis pendens statute

Because we reverse the holding below, the issue of attorneys' fees in connection with the lis pendens does not need to be decided by this court.

## CONCLUSION

Duckworth's interest in the eleventh lot is best characterized as a personalty interest in the partnership. In this case, we hold inapplicable the statute of frauds' bar to recovery under oral agreements which require the transfer of an interest in real estate, or which cannot be performed within one year. Thus, it is irrelevant whether the alleged agreement here required the transfer of land between partners, either originally or as modified.

Reversed.

---

[22]*Malnar*, 128 Wn.2d at 534.

[23]*See Winslow v. Mell*, 48 Wn.2d 581, 586, 295 P.2d 319 (1956) (statute of frauds did not bar oral contract to log a tract of timber since it could have been logged in a year using enough personnel and equipment).

WEBSTER and ELLINGTON, JJ., concur.

Reconsideration denied January 8, 1999.

Review denied at 138 Wn.2d 1002 (1999).