MARCO KONA WAREHOUSE, a Hawaii Limited Partnership, Plaintiff-Appellant, *v.* SHARMILO, INC., a Hawaii corporation, doing business as Kona's Something Special, and GLORIA GREEN, Defendants-Appellees

NO. 12851

(CIVIL NO. 87-176)

JANUARY 27, 1989

BURNS, C. J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C. J.

Plaintiff-lessor Marco Kona Warehouse (MKW) appeals the February 18, 1988 First Amended Judgment which awarded it

$3,476.98 damages[1] plus costs, attorney fees, and prejudgment interest from August 15, 1986 against defendant-lessee Sharmilo, Inc. (Sharmilo), and defendant-guarantor Gloria Green. MKW contends that the judgment is $13,153.48 too low because it does not include 1) MKW's $8,453.60 net lost rent for its warehouse bays 7, 9, and 10 vacated by the lessee who moved into MKW's bays 2, 4, and 6 after they were wrongfully abandoned by Sharmilo and 2) MKW's $4,699.88 cost of moving the lessee of MKW's bay 11 to make room for the lessee who occupied MKW's bays 7, 9, 10 and 11 after they were vacated. We affirm.

MKW is the owner and lessor of a commercial warehouse building in Kailua-Kona, Hawaii. The building is divided into twelve bays generally as follows:

East

| | |
|---|---|
| 11 | 12 |
| 9 | 10 |
| 7 | 8 |
| 5 | 6 |
| 3 | 4 |
| 1 | 2 |

North ... South

West

By a lease dated December 29, 1983, MKW leased bays 2, 4, and 6 to Sharmilo from January 1, 1984 through October 14, 1987. Green personally guaranteed Sharmilo's performance.

---

[1]

| | |
|---|---|
| $ 772.67 | Net rent lost on bays 2, 4, and 6 |
| 1,793.00 | Repair expenses |
| 1,200.00 | Rental agent commission |
| 461.31 | Late fees |
| (750.00) | Security deposit |
| $3,476.98 | Total damages |

Sharmilo breached the December 29, 1983 lease by abandoning bays 2, 4, and 6 on August 15, 1986 and moving elsewhere.

MKW prepared bays 2, 4, and 6 for reletting and obtained the services of a rental agent. After advertising the space for only two or three days, MKW stopped advertising when Ameritone Painting (Ameritone), the lessee of bays 7, 9, and 10, expressed an interest in vacating bays 7, 9, and 10 and moving into bays 2, 4, and 6. Pursuant to an agreement with MKW, Ameritone on October 1, 1986 moved out of bays 7, 9, and 10 and into bays 2, 4, and 6 at a rent higher than Sharmilo was obligated to pay.

After Ameritone vacated bays 7, 9, and 10, Hawaii Pipe and Supply (HPS), the lessee of bays 1, 3, and 5, decided to also lease bays 7, 9, 10 and 11. Bay 11 was occupied by Island Marine. The bay 11 lease expressly allowed MKW to move Island Marine at MKW's expense. By agreement, Island Marine exited bay 11 in exchange for free rent and $4,699.88.

The occupancy of the relevant bays for the relevant time periods was as follows:

| Bays | Lessee and Entry Date | Exit Date | Lessee and Entry Date | Exit Date | Lessee and Entry Date |
|------|-----------------------|-----------|-----------------------|-----------|-----------------------|
| 1, 3, 5 | HPS pre-01/01/84 | | | | |
| 2, 4, 6 | Sharmilo 01/01/84 | 08/15/86 | Ameritone 10/01/86 | | |
| 7, 9 | Ameritone | 09/30/86 | HPS 01/01/87 | | |
| 10 | Ameritone | 09/30/86 | HPS 01/01/87 | 03/01/87 | HPS 05/01/87 |
| 11 | Island Marine | 02/?/86 | HPS 03/01/87 | | |

The lower court awarded a $3,476.98 judgment plus costs, attorney fees, and prejudgment interest from August 15, 1986. MKW appeals because the judgment does not include the $8,453.60 net lost rent on bays 7, 9, and 10 and the $4,699.88 expense to move Island Marine out of bay 11.

As stated by MKW in its opening brief:

> The fact that such additional damages are not directly linked to the specific space leased to and wrongfully abandoned

by SHARMILO — in light of SHARMILO's breach of its obligation of good faith and fair dealing toward MARCO KONA — is not dispositive of the issue. As a result of SHARMILO's bad faith conduct and the terms of the lease between the parties, a strict interpretation of the traditional standard for measuring damages for breach of a lease should give way to a broader and more reasonable approach. In other words, SHARMILO and GREEN, who have once breached the lease, should not be allowed to again repudiate the lease and profit at the expense of MARCO KONA. This is especially true when, due to MARCO KONA's good faith mitigation efforts, the potential damages for lost rent which SHARMILO and GREEN could have become liable were reduced from a potential maximum of $31,979.01 to an actual damage figure of only $13,926.15.[2]

(Footnote added.)

On this issue, after a bench trial, the lower court concluded:

6. Plaintiff, Marco Kona may have acted reasonably by relocating existing tenants to occupy the space wrongfully abandoned by Defendant Sharmilo, Inc., but Plaintiff Marco Kona is bound to credit the rent received against the rent due from Defendant Sharmilo, Inc.

\* \* \*

8. Plaintiff, Marco Kona, mitigated damages by filling the space left vacant by virtue of Defendant Sharmilo, Inc.'s abandonment. This relocation ultimately left Plaintiff Marco Kona with other space standing vacant in the same building, and Plaintiff seeks damages for these new vacancies. Such damages cannot be established with reasonable certainty, are, by their nature, speculative and were not within the contemplation of the parties when they entered the lease agreement.

The December 29, 1983 lease of bays 2, 4, and 6 to Sharmilo states in relevant part as follows:

ARTICLE 12 — *REMEDIES UPON DEFAULT*

The remedies hereafter stated are cumulative and the exer-

---

[2] This $13,926.15 actual damage figure includes the $772.67 net lost rent for warehouse bays 2, 4 and 6 which was included in the $3,476.98 judgment.

cise of one by the Landlord will not prevent it from exercising any other or all remedies hereafter stated.

\* \* \*

12.02. *Legal Action.* The Landlord may institute a legal action for summary possession or other judicial relief it desires. In such an action the Landlord may proceed for damages, specific performance, or for breach of contract plus any other relief deemed advisable. The Tenant hereby waives prior notice or demand under this Lease with regard to such legal actions.

\* \* \*

12.05. *Election to Terminate.* The re-entry and possession of the premises by the Landlord shall not automatically be construed as an election by the Landlord to terminate this Lease and will not be such an election unless the Landlord gives notice to the Tenant stating that the Lease is terminated. If the Lease is not terminated, the Landlord may lease the premises to another party for all or a portion of the remaining Lease period. Any rents received by the Landlord shall first be applied to the cost of restoring the premises to their condition at the time they were originally leased to the Defaulting Tenant. Payments will be made to expenses incurred in the repossession including any broker's commissions that may have been paid with regard to consummating the Lease. Any amounts left over shall be charged against the rent due under this Lease.

Sharmilo does not contest its liability for the $3,476.98 damages which includes the $772.67 net rent lost by MKW on bays 2, 4, and 6. The question is whether Sharmilo is also liable for the $8,453.60 net lost rent for bays 7, 9, and 10 which were vacated by Ameritone, the new lessee of bays 2, 4, and 6, and the $4,699.88 cost of moving Island Marine, the prior lessee of bay 11, to make room for HPS, the new lessee of bays 7, 9, 10, and 11. Our answer is no as a matter of law.

I.

In its February 18, 1988 Conclusions of Law 5, the lower court stated: "No cases in Hawaii have found that a commercial lessor is

under a duty to mitigate damages by reletting the abandoned premises." On appeal, however, both MKW and Sharmilo appear to agree that MKW had a duty to mitigate. We hold that MKW was legally obligated to mitigate its damages by making objectively reasonable efforts to re-lease the wrongfully abandoned bays for the remainder of the lease term. *Schneiker v. Gordon*, 732 P.2d 603, 608 (Colo. 1987); Love, *Landlord's Remedies When the Tenant Abandons*, 30 Kan. L. Rev. 533, 550 (1982). As stated by our supreme court, "In contract or in tort, the plaintiff has a duty to make every reasonable effort to mitigate his damages." *Malani v. Clapp*, 56 Haw. 507, 517, 542 P.2d 1265, 1271 (1975).

## II.

Next, we must determine whether MKW or Sharmilo had the burden of proving that MKW did or did not satisfy its duty to mitigate its damages. We conclude that it was Sharmilo's burden. As stated by our supreme court, "The burden, however, is upon the defendant to prove that mitigation is possible, and that the injured party has failed to take reasonable steps to mitigate his damages." *Malani v. Clapp*, 56 Haw. at 517, 542 P.2d at 1271.

## III.

Finally, the dispositive question is whether a lessor who is mitigating damages can hold the lessee who wrongfully abandons three leased warehouse bays liable for 1) rents lost on three of lessor's other warehouse bays vacated with lessor's permission by a lessee who then leased the three wrongfully abandoned warehouse bays and 2) the cost of moving a lessee out of one of lessor's other warehouse bays to make additional room for a lessee who leased the three warehouse bays vacated with lessor's permission by a lessee who leased the three wrongfully abandoned warehouse bays. In other words, in the absence of Sharmilo's consent, did MKW's damage mitigating efforts extend Sharmilo's liability beyond the net rent lost for bays 2, 4 and 6 to the $8,453.60 net rent lost for bays 7, 9 and 10 and the $4,699.88 cost of moving Island Marine out of bay 11? Our answer is no because Sharmilo, the lessee who

wrongfully abandoned bays 2, 4, and 6, did not consent to such liability.

We are reluctant to hold a lessee liable for the vacancy of space which it neither leased nor consented to be liable for. The difficulty in comparing the desirability of different locations from a prospective lessee's point of view and in accurately determining what might have been had the lessor not elected to engage in such musical chairs makes it too difficult to determine the objective reasonableness of the lessor's decisions to fill the wrongfully abandoned leased premises by permitting and facilitating current lessees to move and to hold the lessee who wrongfully abandoned the leased premises liable for the resulting vacated spaces and the cost of facilitating the moves. When the lessor owns all of the vacated spaces, its added self-interest compounds the problem.

If MKW wanted to hold Sharmilo liable for the net lost rent for bays 7, 9, and 10 and the cost of moving Island Marine out of bay 11, it had to obtain Sharmilo's consent. Until it consented to such an extension of its liability, Sharmilo was, as a matter of law, liable only for bays 2, 4, and 6 and not for bays 7, 9, 10, and 11.

Accordingly, the February 18, 1988 First Amended Judgment is affirmed.

*S. V. Quitiquit* (*Matthew G. Jewell* with him on the briefs; *Case & Lynch* of counsel) for plaintiff-appellant.

*Robert L. Smith* for defendants-appellees.