[No. 37868-6-I. Division One. August 25, 1997.]

CROWN PLAZA CORPORATION, *Respondent*, v. SYNAPSE SOFTWARE SYSTEMS, INC., *Appellant*.

---

"A. Yes."

[17]*See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).

496

*Andrew A. Guy* and *Bogle & Gates, P.L.L.C.*, for appellant.

*Matthew S. Elich* and *Nelson, Brinson & Elich, P.S.*, for respondent.

WEBSTER, J. — Synapse Software Systems appeals from

a summary judgment order in favor of its landlord, Crown Plaza Corporation. Because Synapse's vice-president asserts that he entered into an oral agreement to terminate the lease, there is a genuine issue of material fact as to whether Synapse breached the lease when it attempted to vacate the premises or whether it was carrying out its obligations under the oral termination agreement. Related factual issues exist as to whether Synapse anticipatorily breached the lease and whether Crown Plaza constructively evicted Synapse. We reverse.

## FACTS

Synapse Software Systems leased commercial office space in a Bellingham office building from Crown Plaza Corporation. The 36-month lease began in February 1993. By January 1995, Synapse was having financial difficulties and had a poor lease payment history. Brad Yakubowich, Synapse's president, and Ken Combs, the manager of Synapse's Bellingham office, discussed closing the Bellingham office and subleasing the premises. Yakubowich claims that he advised Karin Hirsch, Crown Plaza's operations manager, of Synapse's intentions and that she told him not to worry about finding someone to sublease because Crown Plaza had a potential tenant.

According to Ken Combs, Synapse's office manager, he confirmed this arrangement by meeting with Ken Tiderington, Crown Plaza's vice-president. Combs states that they reached a termination agreement. Under the agreement, Synapse would pay the January 1995 rent, which was already late at the time of the discussion, forfeit the deposit, either pay the February rent or leave a telephone system valued at over $6,000, and vacate the premises by February 3. Tiderington told Combs that he would need to get his partner's approval, but later informed him that his partner agreed. Consistent with this agreement, Crown Plaza began showing Synapse's space to potential tenants, including DIS, a tenant in another part of the Crown Plaza Building. Crown Plaza denies that any termination agreement was ever reached.

Synapse claims that Tiderington later asked for a letter stating that it intended to vacate the premises. Kevin Combs drafted a "Lease Agreement Termination," which set forth the terms of the oral agreement reached between Ken Combs and Tiderington. Tiderington said that the document was not what they wanted for purposes of obtaining a new tenant and instructed Kevin to prepare a shorter letter stating only that Synapse was moving out by January 31, 1995. Tiderington would then put the terms of the termination agreement on his letterhead.

On January 26, Synapse tendered a check for the January rent to Tiderington. According to Ken Combs, once Tiderington got the check, he changed his position on the termination agreement, stating that he had a new tenant for Synapse's space, but that the new tenant wanted two month's free rent. Combs told Tiderington that he would check with Yakubowich, but that he thought they would want to keep the original deal.

According to Synapse, its employees began packing for the move during the day on January 26. Crown Plaza contends that they did not pack during the day, but waited until the "darkness of night" to sneak away. In any event, Tiderington and his son physically prevented Synapse from removing the remainder of their belongings from the building and barred them from entering the premises. The next morning, Synapse claims, its equipment had been moved from the premises and the locks changed, although Synapse had paid rent through the end of the month.

Crown Plaza filed a complaint on January 27, alleging that Synapse had attempted to abandon the premises and was in default under the lease. At the same time, it obtained an ex parte writ of attachment of Synapse's personal property. After learning of this, Synapse revoked its earlier notice that it would vacate the premises, reasserting its possessory rights to the property. Crown Plaza did not allow Synapse to regain possession. Rather, it entered into a lease agreement with DIS, another tenant

in the Crown Plaza Building, for Synapse's space. The lease began on April 1, 1995, but DIS was not required to pay rent until June.

Synapse's answer denied that it intended to abandon the lease, asserted that the parties had agreed to terminate the lease, and counterclaimed for wrongful attachment, violation of Washington's Consumer Protection Act, conversion, constructive eviction, and intentional or negligent misrepresentation. The trial court granted Crown Plaza's motion for summary judgment.

## DISCUSSION

■ ■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We review the summary judgment order de novo, considering the evidence in the light most favorable to the non-moving party. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

### Oral Termination Agreement

We must first determine whether a genuine issue of material fact exists as to whether the parties entered into an oral termination agreement. In his deposition, Ken Combs testified that he and Ken Tiderington reached an oral agreement that Synapse would pay rent for January and February, forfeit the deposit, and vacate in early February. Tiderington told Combs that he would need his partner's approval, but later informed him that his partner agreed. He also told him that they had other people interested in the space. Tiderington denies that he entered into a termination agreement and rhetorically questions whether a reasonable business person would agree to terminate a lease worth over $60,000 in exchange for $8,000.

■ Disputes over the existence of oral agreements are not appropriately decided on summary judgment. *See Gar-*

*bell v. Tall's Travel Shop*, 17 Wn. App. 352, 354, 563 P.2d 211 (1977). As here, disputes about oral agreements depend a great deal on the credibility of the witnesses. *Id.* Crown Plaza argues that Synapse did not meet its burden of proving that there was "unequivocal mutual consent" to the agreement, which must be determined from the parties' outward manifestations. *See Rorvig v. Douglas*, 123 Wn.2d 854, 859, 873 P.2d 492 (1994). Crown Plaza contends that Synapse presented no evidence beyond mere allegations or assertions supporting the formation of an oral contract. Crown Plaza appears to confuse the concept of making a bare assertion (e.g., "there was an oral contract") with making a statement that, if believed by a factfinder, would support the legal contention. Here, Combs stated that he and Tiderington entered into an agreement and Tiderington denies it. Only a factfinder can determine which of these statements is more credible, considering all the evidence, including the unsigned written agreement and the reasonableness of the agreement.[1]

## Consideration

██ ██ Crown Plaza argues that, even if there was an oral agreement between the parties, it was not supported by sufficient consideration. "Consideration may consist of an act, a forbearance, the creation, modification or destruction of a legal relationship, or a return promise . . . ." *Emberson v. Hartley*, 52 Wn. App. 597, 601, 762 P.2d 364 (1988). An agreement to do that which one is already obligated to do does not constitute consideration to support a contract. *Queen City Constr. v. City of Seattle*, 3 Wn.2d 6, 17-18, 99 P.2d 407 (1940).

Synapse contends that the agreement with Crown Plaza was that it would pay the January rent, vacate the premises, forfeit the deposit, and either pay February rent

---

[1]The parties dispute whether Karin Hirsch, Crown Plaza's operations manager, had apparent authority to bind Crown Plaza. This is not a material issue because of the assertion that Ken Tiderington, who admits that he had authority to bind Crown Plaza, agreed to terminate the lease. Thus, Synapse's argument does not rest on the earlier statements made by Ms. Hirsch.

or leave a $6,000 phone system. Crown Plaza contends that these acts could not constitute consideration because they were all preexisting duties under the lease. But the lease did not require Synapse to both pay February rent and vacate the premises so Crown Plaza could relet the space. Moreover, the reciprocal surrender of contractual rights constitutes consideration. *Consolidated Elec. Distribs. v. Gier*, 24 Wn. App. 671, 680, 602 P.2d 1206 (1979). Here, considering the facts in the light most favorable to Synapse, a jury could believe that Crown Plaza surrendered the right to collect the remainder of the rent in exchange for Synapse's surrender of its right to continue to occupy the building.

## Equitable Estoppel

The doctrine of equitable estoppel is based on the idea that a party should not be allowed to disavow a representation made to another party if that party would be injured by its reliance on the representation. It requires three elements: (1) an admission, statement, or act inconsistent with the claim afterward asserted, (2) action by the other party on the faith of the admission, statement, or act, and (3) injury to the other party resulting from permitting the first party to contradict or repudiate the admission, statement, or act. *Emrich v. Connell*, 105 Wn.2d 551, 559, 716 P.2d 863 (1986).

Crown Plaza contends that equitable estoppel is not appropriate in this case because there is no evidence that Crown Plaza made representations that it would find someone to sublease the premises or that Synapse could move out. As discussed above, however, these are genuine issues of material fact because of Ken Combs's assertions that Tiderington made these statements to him.

## Anticipatory Breach

Intent to repudiate may be expressly asserted or circumstantially manifested by conduct. *CKP, Inc. v. GRS Constr. Co.*, 63 Wn. App. 601, 620, 821 P.2d 63 (1991).

Crown Plaza contends that Synapse anticipatorily breached its lease by attempting to move out of the premises on the evening of January 26 and giving notice that it would vacate by the end of the month. But Synapse's assertion that there was an oral agreement to terminate the lease, requiring Synapse to vacate the property, creates a genuine issue of material fact as to whether Synapse was breaching the original lease or merely carrying out the terms of the oral agreement.

## Constructive Eviction

A landlord's act preventing a tenant from gaining possession of leased property constitutes constructive eviction and excuses the tenant's obligation to pay rent. *Draper Mach. Works v. Hagberg*, 34 Wn. App 483, 486, 663 P.2d 141 (1983); *Olin v. Goehler*, 39 Wn. App. 688, 693, 694 P.2d 1129 (1985).

Crown Plaza contends that its lockout was not unlawful because Synapse was attempting to abandon the premises. Because there are genuine issues of material fact as to whether Synapse was improperly abandoning the property or merely moving out under the terms of the oral termination agreement, there is a genuine issue of material fact as to whether Crown Plaza constructively evicted Synapse.

## Damages

Although we reverse the summary judgment order, we address the damages issue because it is likely to recur at trial.

When a tenant abandons property, the landlord is entitled to recover the rent that would be due for the remainder of the term less the amount actually received from subsequent tenants during that time, so long as the landlord makes an honest and reasonable attempt to relet the property. *See Exeter Co. v. Samuel Martin, Ltd.*, 5 Wn.2d 244, 249, 105 P.2d 83 (1940).

■■ ■ Crown Plaza found a new tenant for the premises vacated by Synapse. Because the new tenant, DIS, moved from another space in Crown Plaza's building, Crown Plaza held Synapse liable for the remainder of DIS's lease. The trial court awarded damages based on Crown Plaza's net loss resulting from Synapse's alleged breach.

Synapse argues that its responsibility for rent should have ended once Crown Plaza relet its space to DIS and that it should not be liable for rent arising from DIS's vacancy. Crown Plaza contends that allowing DIS to move into Synapse's space was a commercially reasonable means of mitigating its damages, as demonstrated by the fact that the rent for DIS's former space is less than Synapse's base rent.

While no Washington case has specifically addressed this issue, the mitigation cases suggest that the breaching tenant is liable only for rent related to the premises it actually leased. *See Exeter*, 5 Wn.2d at 249 (lessor entitled to recover rent for remainder of term "less the amount actually received from subsequent tenants"). This is consistent with the remedies provision in the parties' lease, which gives no indication that a breaching tenant could be liable for the rent of any other premises.

The Hawaii Court of Appeals addressed a similar argument in *Marco Kona Warehouse v. Sharmilo, Inc.*, 768 P.2d 247 (Haw. Ct. App. 1989). In that case, a commercial tenant wrongfully abandoned three warehouse bays. Another tenant in the building moved into the breaching tenant's bays, leaving its three bays vacant. The landlord sought damages in the amount of the net lost rent of the bays vacated by the tenant that moved into the breaching tenant's bays. The landlord argued that "a strict interpretation of the traditional standard for measuring damages for breach of a lease should give way to a broader and more reasonable approach." *Id.* at 250. It pointed out that moving the existing tenant was a good faith mitigation effort which reduced the potential damages for lost rent.

The Hawaii court determined that a landlord who is mitigating damages cannot hold the tenant liable for the bays vacated with the landlord's permission because the breaching tenant did not consent to such liability. *Id.* at 251-52. The court was reluctant to

> hold a lessee liable for the vacancy of space which it neither leased nor consented to be liable for. The difficulty in comparing the desirability of different locations from a prospective lessee's point of view and in accurately determining what might have been had the lessor not elected to engage in such musical chairs makes it too difficult to determine the objective reasonableness of the lessor's decisions to fill the wrongfully abandoned leased premises by permitting and facilitating current lessees to move and to hold the lessee who wrongfully abandoned the leased premises liable for the resulting vacated spaces and the cost of facilitating the moves. When the lessor owns all of the vacated spaces, its added self-interest compounds the problem.

*Id.* at 252. The Hawaii court's approach is reasonable and in keeping with the general understanding of a landlord's duty to mitigate. While Crown Plaza's proposed rule might allow a landlord more flexibility in mitigating damages, it is beyond the parties' expectations.[2]

We reverse.

BAKER, C.J., and GROSSE, J., concur.

---

[2]Synapse also argues that the court (1) improperly allowed damages under the lease's acceleration clause for a portion of the lease that had not yet occurred at the time of trial, which had the effect of relieving Crown Plaza from its duty to mitigate damages for that time period, and (2) failed to reduce the damages for future rent to present value. Neither of these issues are likely to recur at trial because the lease period will be over. Thus, the court can properly consider whether Crown Plaza made reasonable attempts to mitigate damages throughout the remaining term of the lease.