[No. 45519-2-I. Division One. March 19, 2001.]

PETER A. SALUTEEN-MASCHERSKY, *Appellant*, v. COUNTRYWIDE FUNDING CORPORATION, ET AL., *Respondents*.

*Jean M. Schiedler-Brown* (of *Law Offices of Schiedler-Brown & Associates*), for appellant.

*John J. Watson* and *Michael B. King* (of *Lane Powell Spears Lubersky, L.L.P.*), for respondents.

APPELWICK, J. — Peter Saluteen-Maschersky (Saluteen) appeals a trial court order dismissing his claims against Countrywide Funding Corporation (Countrywide) on summary judgment, as well as the trial court's decision to strike additional causes of action. The primary issue is whether Saluteen presented sufficient evidence of the existence of an oral contract between the parties. Because Saluteen offers, in effect, no more than his bare assertion that the contract existed, summary judgment was appropriate. Finding no other error, we affirm.

## FACTS

In June 1993, Saluteen granted a deed of trust to secure an adjustable rate note on his personal residence. Countrywide was appointed the servicing agent for the note and deed of trust.

Saluteen's August and September 1995 payments on the loan were late. Saluteen failed to make an October payment. By letter dated November 7, 1995, Countrywide notified Saluteen that he had failed to pay the loan in a timely manner and that his credit standing was in jeopardy.

Saluteen spoke with a Countrywide loan counselor on the telephone on November 13, 1995. According to Countrywide, Saluteen "offered to pay $1,000 per week until he was 'caught up,' promised he would make his first payment by November 20, 1995, and stated he would 'call back' with a date by which he could make a total cure." Countrywide acknowledges receiving this proposal, but claims that "*no* employee of Countrywide ever agreed to accept Saluteen's proposal, extend credit, or forbear from enforcing the terms of repayment of his promissory note." Further, according to Countrywide, its collection protocol requires that supervisory review and written approval be generated to memorialize a new agreement. This never took place. But Saluteen claims that he and Countrywide reached an oral agreement, with the same terms as those he specified in his offer.

Saluteen sent Countrywide a check for $1,000, which Countrywide acknowledges receiving on November 22, 1995. Saluteen sent another check in the amount of $1,000, which Countrywide received in early December; Countrywide returned the check to Saluteen. In a letter dated December 5, which accompanied the returned check, Countrywide informed Saluteen that it was returning the funds because the amount remitted did not represent the total amount then due, $8,761.92.

Countrywide's records reflect that it again contacted Saluteen by telephone on December 1, 1995. Saluteen confirmed to the Countrywide representative on the telephone that he was unable to reinstate his loan due to financial hardship. He stated that he would continue to send $1,000 until his loan was current. According to Countrywide's telephone log, Saluteen was informed that this proposal was unacceptable.

In a letter dated February 2, 1996, Countrywide sent Saluteen a notice of default. The letter credited only the sum of $379.90 to Saluteen's account, not the full $1,000 that he had paid in late November.

In May 1996, Saluteen filed for bankruptcy relief under Chapter 13. That case was dismissed in August 1997.

After dismissal of the bankruptcy, Countrywide initiated foreclosure in October 1997. On the eve of foreclosure, Saluteen filed suit against Countrywide, followed by a motion for preliminary injunction to stop the foreclosure sale. Saluteen's complaint alleged the following causes of action: (1) breach of contract; (2) "Sale on Deed of trust noted in violation of RCW Title 61"; (3) negligent breach of duty to account for payments received; (4) violation of federal unfair billing practices act; and (5) defamation.

The trial court granted Saluteen an order restraining the scheduled trustee's sale, on condition that Saluteen pay $2,952.04 per month into the registry of the court, which represented the monthly mortgage payment. Saluteen failed to make the required payments. The court consequently entered an order dissolving the stay of the trustee's sale.

Countrywide moved for summary judgment dismissal of all of Saluteen's claims. Saluteen's response to Countrywide's motion for summary judgment raised, for the first time, three new substantive claims: (1) equitable estoppel; (2) negligent misrepresentation; and (3) Title 15 U.S.C. section 1601 (Truth in Lending Act) violations. Countrywide filed a motion to strike these new causes of action. On June 18, 1999, after hearing oral argument, the trial court granted the motion to strike. On that date, the court also granted Countrywide's motion for summary judgment, dismissing all of Saluteen's claims with prejudice. Saluteen appeals.

## ANALYSIS

I. SUMMARY JUDGMENT

■ Saluteen first contests the trial court's summary judgment order. A trial court's order granting summary judgment is reviewed de novo on the record before the trial court at the time of the order. *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92, 993 P.2d 259 (2000). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

law. *Trimble,* 140 Wn.2d at 93; CR 56(c). All facts and reasonable inferences from them are to be considered in the light most favorable to the nonmoving party. *Trimble,* 140 Wn.2d at 93. The motion should be granted if, from all the evidence, reasonable persons could reach but one conclusion. *Trimble,* 140 Wn.2d at 93.

A. Oral Contract

Saluteen argues that the trial court erred in granting Countrywide summary judgment dismissal of his claims of breach of contract, negligent breach of duty of good faith, and defamation.[1] In essence, all of these claims depend upon Saluteen's assertion that an oral contract existed between the parties, and that Countrywide breached that contract. According to Saluteen, under the contract, he was to pay Countrywide $1,000 per week until his loan was caught up, and Countrywide was to forbear from finding him in default.

The dispositive issue is whether the parties mutually assented to the terms of the purported contract. For a contract to exist, there must be a mutual intention or "meeting of the minds" on the essential terms of the agreement. *McEachren v. Sherwood & Roberts, Inc.,* 36 Wn. App. 576, 579, 675 P.2d 1266 (1984). "Mutual assent generally takes the form of an offer and an acceptance." *Pac. Cascade Corp. v. Nimmer,* 25 Wn. App. 552, 556, 608 P.2d 266 (1980). The burden of proving a contract, whether express or implied, is on the party asserting it, and he must prove each essential fact, including the existence of a mutual intention. *Cahn v. Foster & Marshall, Inc.,* 33 Wn. App. 838, 840, 658 P.2d 42 (1983).

Generally, the trier of fact in a trial setting should make the final determination with respect to the existence of an oral contract; disputes about oral contracts should not

---

[1] Saluteen also argues that genuine issues of material fact exist regarding his claims of negligent misrepresentation and equitable estoppel. But these claims were not brought in the original complaint, and instead were dismissed by the trial court on Countrywide's motion to strike. That is the subject of the analysis below and entails a different standard of review.

be decided by summary judgment. *Duckworth v. Langland*, 95 Wn. App. 1, 7, 988 P.2d 967 (1998). This is because resolution of disputes over the existence of oral contracts depends on the credibility of witnesses. *Crown Plaza Corp. v. Synapse Software Sys.*, 87 Wn. App. 495, 500-01, 962 P.2d 824 (1997). Nonetheless, the general rule still applies: bare assertions of ultimate facts and conclusions of fact are alone insufficient to defeat summary judgment. *See Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988).

Saluteen first claims that Countrywide made him an offer to enter an agreement allowing him to catch up on his loan payments. He claims that Countrywide made the offer in its letter dated November 7, 1995. In that letter, Countrywide notified Saluteen that his loan payments were untimely. The letter also stated, "Since your Countrywide credit standing is affected by how promptly you make your payments, please contact our office to reach a mutual arrangement or mail $6,662.28 today to bring your account to a current status."

■ In order to satisfy the offer element of mutual assent, Saluteen must show that Countrywide offered "a promise to render a stated performance in exchange for a return promise being given." *Pac. Cascade Corp.*, 25 Wn. App. at 556. Saluteen has failed to meet this burden. In the November 7 letter, Countrywide did not promise to render a stated performance in exchange for a return promise. No contract terms were specified. The November 7 letter did not constitute an offer to enter an agreement.

Saluteen next asserts that the parties formed an oral contract through a series of telephone conversations. As evidence of mutual assent, he relies on Countrywide's telephone logs and his own declarations.

Countrywide's telephone logs do not help Saluteen. The first relevant telephone conversation occurred on November 13, 1995. The log states verbatim:

MR CLLD BACK SD HE IS NT GOING TO B ABLE TO

AFFORD ANY MORE PMT ADJUSTMENTS . . . . . . SD CN SND $1000.00 PER WEEK UNTIL HE IS CAUGHT UP . . . WLL SND A PMT BY 11/20 . . . MR WLL CLL BACK W/ TOTAL CURE DATE . . . MR WAS ILL 4 2 MONTHS PRIOR . . . .

According to the log, Saluteen proposed to pay off the loan arrears by sending $1,000 per week. But he was also to call back with an acceptable date by which he could bring the loan current. Thus, all of the essential terms of an agreement were not specified at this point.

The next telephone conversation occurred on December 1, 1995. The phone log states verbatim:

MR CLLD SD HE WLL CONTINUE TO SEND $1000. UNTL LN IS CURRENT . . . ADVSD NT ACCEPTABLE . . . MR SD THATS THE BEST HE CAN DO . . . WLL HVE LN CURRENT BY EOM . . . .

The telephone log plainly states that the Countrywide representative informed Saluteen that his offer to bring the loan current by sending $1,000 payments was not acceptable.

■ Thus, the telephone logs are insufficient evidence of mutual assent. Countrywide does not deny receiving Saluteen's proposal to bring the loan current by making $1,000 payments. But, according to the telephone logs, Countrywide never accepted Saluteen's offer. Countrywide's silence in the first phone call cannot be deemed an acceptance of the proposal. Failure to reject an offer is not equivalent to assent of that contract since silence is acceptance only where there is a duty to speak. *Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 482-83, 670 P.2d 648 (1983). Further, Countrywide explicitly rejected the proposal in the second phone call.

■ Saluteen's declarations in the record likewise fail to raise a genuine issue of material fact. The record contains three declarations from Saluteen. In the first declaration, Saluteen stated, "[I] spoke to a representative. I informed her I could send $1000.00 by November 20. I did this. *It was*

*clear to me* that our agreement was that I would mail the check by that date." (Emphasis added.) In the next declaration, Saluteen attested:

> I had spoken with Countrywide on December 1, 1995. At that time, we discussed that I would continue making $1000.00 per week payments and be current by the end of the month. *I was clear that this was an agreement.*

(Emphasis added.) In the final declaration, Saluteen attested, "In the fall of 1995 I entered into a verbal agreement to pay $1000.00 per week until caught up." The declarations indicate little more than that Saluteen believed that an agreement existed. In determining the mutual intention of contracting parties, the unexpressed, subjective intentions of the parties are irrelevant; the mutual assent of the parties must be gleaned from their outward manifestations. *City of Everett v. Estate of Sumstad*, 95 Wn.2d 853, 855, 631 P.2d 366 (1981).

Saluteen attempts to evade this rule by relying on *Crown Plaza Corp. v. Synapse Software Sys.*, 87 Wn. App. 495, 500-01, 962 P.2d 824 (1997). In that case, the plaintiff alleged that it had formed an oral agreement with the defendant to terminate its lease for office space. The defendant denied the existence of an oral contract. The court held that the plaintiff had asserted sufficient facts, beyond its mere subjective belief, to raise an issue of fact regarding whether an oral contract existed. For instance, the plaintiff asserted that the defendant behaved consistently with the terms of the asserted contract, by showing the office space to prospective tenants. Further, the plaintiff offered unsigned documentary evidence, drafted at the defendant's request, memorializing the terms of the contract. As the court explained:

> Crown Plaza contends that Synapse presented no evidence beyond mere allegations or assertions supporting the formation of an oral contract. Crown Plaza appears to confuse the concept of making a bare assertion (e.g., "there was an oral contract") with making a statement that, if believed by a factfinder, would support the legal contention.

87 Wn. App. at 501.

■ Here, by contrast, Saluteen offers no more than bare assertions that an oral contract exists. Saluteen's behavior was generally inconsistent with the terms of the purported contract. For instance, Saluteen offered to bring his loan current by making weekly $1,000 payments. Yet, according to the record, Saluteen made only two such payments, which Countrywide acknowledges receiving on November 22, 1995, and in early December 1995. Further, in a telephone conversation on December 11, 1995, Saluteen repudiated the contract. The phone log states verbatim:

MR SEZ THAT HE HAS A TAPE WHERE HE SW MICHELLE GUNTHER AND SHE HAS AGREED TO ACCEPT $1000 TILL ACCT IS CURRNT - INFRMD MR THAT HIS LAST CONVERSATION WITH HER WAS ON 12-1 AND SHE INFRMD HIM THAT WE CAN NOT CONTINUE TO ACCEPT $1000 ON THIS ACCT - MR SEZ THAT HE WILL NOT BE REMITTING ANY MORE PMTS AND HE WILL JUST SIT ON HIS $$$$ AND WILL SEE US IN COURT - MR DID NOT COMMIT TO CURE ACCT - I HAVE INFRMD MR WE ARE GOING TO NEED TAD $8761.92 BY 12-16 AFTER THAT ANOTHER LATE CHARGE FEE WILL BE ACCRUED ON THE ACCT MR STARTED TO LAUGH AND SEZ SEE US IN COURT SINCE IT WILL TAKE 3 YRS FOR US TO F/C ON THE PROP

Finally, Saluteen offers no evidence that Countrywide behaved consistently with the terms of the purported contract. Thus, the evidence of mutual assent was insufficient to defeat summary judgment.

## B. Negligent Accounting

Saluteen next argues that the trial court erred in dismissing his RCW 61.24.030 and negligence claims on summary judgment. He argues that Countrywide was negligent and violated RCW 61.24.030[2] by failing to account in the notice of default for the $1,000 payments it received from Saluteen.

---

[2] Under RCW 61.24.030(7)(d), it is a requisite to foreclosure that the written notice of default must contain "[a]n itemized account of the amount or amounts in arrears if the default alleged is failure to make payments."

The record shows that Saluteen sent two $1,000 checks to Countrywide. Countrywide acknowledges receiving the first check on November 22, 1995, and the second check in early December. Countrywide returned the second check to Saluteen.

In a letter dated February 2, 1996, Countrywide sent Saluteen a notice of default. The letter claimed that Saluteen owed a total of $14,760.20 in monthly payments, plus late charges of $590.40. The letter credited only the sum of $379.90 to Saluteen's account, not the full $1,000 that he had paid in late November.

According to Countrywide, the funds from the first check were held in a "suspense account," because they did not represent the minimum payment due of $2,952.04. Countrywide held the funds in the account until January 9, 1996. At that time, $601.10 was allocated to late charges and $19.00 to property inspection fees. Countrywide credited the remaining balance of $379.90 to Saluteen's account in the February 2, 1996, letter of default. Saluteen offers no evidence to dispute these factual allegations. Saluteen fails to explain how Countrywide's decision to apply the remainder of the balance to fees and late charges was improper.

Finally, Saluteen argues that the total amounts due are disputed and that Countrywide's accounting is deficient. But Saluteen's Chapter 13 plan incorporated this theory of Countrywide's faulty accounting, and Countrywide objected to it. Thereafter, Saluteen assented to Countrywide's objection and amended his Chapter 13 plan. Countrywide then withdrew its objection. Saluteen's amended plan acknowledged Countrywide's accounting.

"Under the doctrine of res judicata, a plaintiff is barred from litigating claims that either were, or should have been, litigated in a former action." *Kuhlman v. Thomas*, 78 Wn. App. 115, 120, 897 P.2d 365 (1995). Here, Saluteen's claim of faulty accounting was earlier litigated in the bankruptcy proceeding. The claim is therefore barred by res judicata.

## II. ORDER STRIKING CAUSES OF ACTION

Finally, Saluteen argues that the trial court abused its discretion in entering the order striking the causes of action of equitable estoppel and negligent misrepresentation. Saluteen first raised these claims in his response opposing Countrywide's motion for summary judgment. Countrywide filed a motion to strike the claims. The trial court granted the motion.

 The decision to grant leave to amend the pleadings is within the discretion of the trial court. *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). The trial court's decision "will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

 Saluteen's complaint neither cited the equitable estoppel and negligent misrepresentation claims, nor mentioned any factual basis to support them. A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests. *Lewis v. Bell*, 45 Wn. App. 192, 197, 724 P.2d 425 (1986). Because the complaint failed to provide fair notice of the claims, the trial court's decision to strike the claims was not an abuse of discretion.

The trial court is affirmed.

BECKER, A.C.J., and WEBSTER, J., concur.