CENTERLINE INVESTMENT CO.,
Respondent/Cross Appellant,

v.

TRI–COR INDUSTRIES, INC.,
Appellant/Cross Respondent.

No. ED 79545.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 23, 2002.

Clyde C. Farris, Stephen C. Hiotis, Copeland Thompson & Farris, P.C., Clayton, MO, for appellant.

Steven W. Koslovsky, Blumenfeld, Kaplan & Sandweiss, P.C., Clayton, MO, for respondent.

JAMES R. DOWD, P.J.

Tri–Cor Industries, Inc. (tenant) breached its commercial lease with respondent Centerline Investment Company (landlord). The landlord, in an effort to mitigate, moved another tenant in the building into Tri–Cor's space, charging a higher rent than Tri–Cor was paying and then sued Tri–Cor for the rent due on the other tenant's prior lease and for other consequential damages. The trial court held that Centerline could recover for the rent due on the other tenant's space and that Tri–Cor was not entitled to a credit for the additional rent paid on its former space by the new tenant. Tri–Cor appeals. Centerline cross-appeals. We reverse and remand.

Robert Bernstein, doing business as Centerline, leased suites 100, 102 and 104, occupying 6,240 square feet, to Tri–Cor for three years, from November 1, 1998 to October 31, 2001. According to the lease, Tri–Cor's fixed base rent was $4,865 per month, but Tri–Cor was also responsible for paying a pro-rata share of any increase in real estate taxes and common area maintenance (CAM) expenses such as water, sewer, landscaping, snow removal and parking lot repairs. Tri–Cor also paid a security deposit of $6,740.

On June 29, 1999, less than nine months into its first year under the lease, Tri–Cor notified Bernstein by letter that it was closing its Maryland Heights office and sought to either terminate the lease or sublease the space to another tenant. Bernstein agreed to allow Tri–Cor to sublease the property. On July 23, 1999, Tri–Cor entered into a six-month exclusive agency agreement with Bernstein's real estate brokerage firm, Robern Inc., to find a replacement tenant.

Tri–Cor vacated the premises on August 31, 1999, but continued to pay its monthly rent. In October 1999, Tri–Cor notified Robern that it was terminating the exclusive agency agreement and then hired NAI Finn & Associates as its agent. NAI Finn also proved unsuccessful in reletting the space. On April 1, 2000, Tri–Cor stopped making its monthly rent payments.

Bernstein filed suit for breach of the lease on May 16, 2000. In his petition, Bernstein prayed for the base rent on the leased space, additional rent as a result of tax increases, CAM charges, late payment charges, expenses associated with reletting the space, collection costs (including attorneys' fees and court costs), and interest on all unpaid balances.

In June 2000, one of his existing tenants, Alcide Corporation, approached Bernstein about the vacant space left behind by Tri–Cor. Alcide was at that time beginning a three-year lease of Suite 138, occupying 2,080 square feet in the same building, for $1,690.00 per month. Alcide and Bernstein terminated the lease for Suite 138 and entered into a new three-year lease on the former Tri–Cor space, running from July 1, 2000 through June 30, 2003. Alcide's lease called for escalating base rent payments: $5,070 per month the first year, $5,325 per month the second year, and $5,595 per month the third year.

A bench trial was held on March 20 and 21, 2001. At trial, Centerline argued that in addition to the unpaid rent on the leased premises, it was also entitled to rent on the space that Alcide vacated when it moved into Tri–Cor's space. Tri–Cor disagreed, arguing that it owed Centerline nothing because it was induced to leave the space by false assurances from Bernstein that he had located a new tenant for the space. The trial court disbelieved Tri–Cor's claim that it was induced to leave and held that Tri–Cor breached the lease when it stopped making payments in April 2000. The court awarded Centerline the following: unpaid rent (including late payment charges) on its leased space ($16,054.50); additional rent (including late payment charges and 4% interest) as a result of tax increases ($1,059.24) and CAM charges ($3,888.09);[1] expenses associated with reletting the space ($1,703.30); landlord overhead ($567.19); utilities ($110.54); and attorneys' fees ($8,739.27). The court further found that moving Alcide from its space to Tri–Cor's former space was a reasonable mitigation of damages and that under the terms of the lease Tri–Cor was responsible for the rent (and late charges) on the space Alcide vacated when it moved into Tri–Cor's space ($16,731). After crediting Tri–Cor for its security deposit of $6,740, the court's awarded Centerline $41,053.89.[2] The trial court refused, however, to award Centerline damages for lost leasing commission, concluding that they were not specifically pleaded as special damages.

Tri–Cor appeals, arguing that the court erred in three respects. First, Tri–Cor argues the court erred in awarding Centerline damages based on the rent for Al-cide's former space. Second, Tri–Cor argues that it should have been given credit for the rent Alcide paid over the amount Tri–Cor was obligated to pay. Finally, Tri–Cor argues that Centerline should not have been awarded 100% of its attorneys' fees because much of the work the attorneys did was on aspects of the case Centerline should lose on appeal. Centerline cross-appeals, arguing that it was entitled to real estate commissions on the Tri–Cor lease and the reletting of the Tri–Cor premises after default.

■■ In reviewing a bench tried case, we view the evidence in the light most favorable to the judgment and disregard all other evidence. *P.L.W. v. T.R.W*, 890 S.W.2d 688, 690 (Mo.App. S.D.1994). We must affirm a trial court's judgment unless it is not supported by evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Tri–Cor's first point is that the trial court erred in finding Tri–Cor liable for rent on the space Alcide left vacant when it moved into Tri–Cor's space. Tri–Cor argues that holding it liable for rent on a space it did not contract for is, as a matter of law, beyond the contemplation of the parties and unforeseeable. Centerline argues that Tri–Cor was obligated to pay these rents under Articles 12 and 13 of the lease, which state that Tri–Cor would reimburse Centerline for all "direct or consequential" damages if it should default. Centerline maintains that because the lease required Tri–Cor to pay "consequential" and "any and all" damages from a breach, its recovery is not limited to dam-

---

1. The CAM charges appear to be miscalculated. Adding the $2,006.04 owed for 1999 and the $1,178.76 owed for 2000, the total CAM charges should be $3,184.80, not $3,888.09.

2. The total damages found appear to contain a miscalculation. Adding together the separate awards made by the court, we believe the award should have been $41,409.84.

ages that are the "natural and direct consequence of the breach."

■ This is a case of first impression in Missouri. We agree with Centerline that including a provision for "consequential" and "any and all" damages in a lease broadens the scope of damages beyond those that are the "natural and direct consequence" of the breach, but even consequential damages are limited. If consequential damage clauses were interpreted to allow recovery for "any and all" damages, however remote, they would include damages entirely unimagined and unforeseeable by the parties and "stretch infinitely in time." DOBBS, LAW OF REMEDIES 228 (2nd ed., Hornbook Series, 1993). The law has therefore limited consequential damages to those that are "within the contemplation of the parties at the time of contracting, or 'foreseeable' to them." *Id.* at 770; *Mark v. H.D. Williams Cooperage Co.*, 204 Mo. 242, 103 S.W. 20, 25 (1907).

Centerline cites no case where a court has allowed an award of damages for the rent on another tenant's space when that tenant moves into the space formerly occupied by the defendant. The only two reported cases on this issue are from Hawaii and Washington. In both cases the courts found that holding a tenant liable for rent on a space it did not contract for is, as a matter of law, beyond the contemplation of the parties and unforeseeable. In *Marco Kona Warehouse v. Sharmilo, Inc.*, 7 Haw. App. 383, 768 P.2d 247, 249 (1989), the defendant abandoned three warehouse bays it had leased. The landlord, in a good faith effort to mitigate, allowed another tenant to move from its existing space to the defendant's bays for a higher rent than the defendant was obligated to pay. *Id.* The landlord asked to be compensated for lost rent and expenses associated with filling the spaces left by the tenant who moved into the defendant's

bays. *Id.* The Hawaii Court of Appeals held that such damages were, as a matter of law, not within the contemplation of the parties. *Id.* at 251. Explaining itself, the court said:

> We are reluctant to hold a lessee liable for the vacancy of space which it neither leased nor consented to be liable for. The difficulty in comparing the desirability of different locations from a prospective lessee's point of view and in accurately determining what might have been had the lessor not elected to engage in such musical chairs makes it too difficult to determine the objective reasonableness of the lessor's decisions to fill the wrongfully abandoned leased premises by permitting and facilitating current lessees to move and to hold the lessee who wrongfully abandoned the leased premises liable for the resulting vacated spaces and the cost of facilitating the moves. When the lessor owns all of the vacated spaces, its added self-interest compounds the problem.

*Id.* at 252. The Hawaii court held that if a landlord wishes to mitigate by moving one tenant into a defaulting tenant's space and hold the defaulting tenant liable on the other tenant's space, it should obtain the defaulting tenant's consent. *Id.*

The Washington Court of Appeals, citing *Marco Kona*, came to the identical conclusion in *Crown Plaza v. Synapse Software Systems*, 87 Wash.App. 495, 962 P.2d 824 (1997). Pointing to the fact that there was nothing in the lease to indicate that a tenant could be held liable on another tenant's space, the Washington court held that such damages were "beyond the parties' expectations." *Id.* at 828–29.

■ We recognize that the landlord's efforts to mitigate in this case appear to have benefited Tri–Cor. We also acknowledge that there are occasions where it will be economically efficient to give landlords

the freedom to creatively mitigate a defaulting tenant's damages. But we are persuaded that the better rule is to obtain the defaulting tenant's consent before holding it responsible for rent on space it never contracted to lease. Here, the landlord did not even inform the defaulting tenant that it was intending to hold it liable on the rent from the space vacated by Alcide until almost six months after Alcide had moved into Tri–Cor's space. Tri–Cor therefore had no opportunity to arrange for a tenant to occupy the space left open by Alcide's move. Under these circumstances, we find it was error for the court to award Centerline damages based upon the rent that Alcide would have paid if it had not moved into Tri–Cor's space. The damages awarded Centerline must therefore be reduced by $16,731.

Tri–Cor's second point on appeal is that the trial court erred in not awarding it a credit because Alcide paid $1,845 more in rent than Tri–Cor owed under the lease. Tri–Cor was obligated to pay $4,865 per month in rent. Under its lease, Alcide's rent for the first year was $5,070.00 per month, $205 more per month. Tri–Cor argues that both the lease and Missouri law require that it be given a credit for any additional amounts Alcide pays in rent.

In Article 12 of the lease, it says that if the tenant abandons the property, the landlord may re-enter and take possession of the premises. It goes on to describe the landlord's two options when the tenant abandons its premises:

> Landlord may at its option, elect: (a) to terminate the Lease, in which event Tenant shall immediately pay to Landlord as damages, in addition to all other sums owed to Landlord at such time, a sum equal to any and all rent payments that are then due or (b) without terminating this Lease, to relet all or any part

of the Premises as the agent of and for the account of Tenant, upon such terms and conditions as Landlord may deem advisable, in which event the rents received on such reletting shall be applied first to the expenses of reletting and collection, including, but not limited to necessary renovation, repairs, and alteration of the Premises, reasonable attorney's fees, court costs, real estate commissions paid, and any other costs, and thereafter, to make payments on all sums due or to become due Landlord hereunder, and if a sufficient sum shall not be thus realized to pay such sum and other charges, Tenant shall pay Landlord any deficiency monthly, and Landlord may bring an action therefor as such monthly deficiency shall arise.

■ After Tri–Cor announced that it would be vacating its premises Centerline opted not to terminate the lease and to relet the property as "the agent of and for the account of Tenant. . . ." Under this option, the express terms of the lease require Centerline to apply "the rents received" from Alcide to the enumerated expenses, costs and rent due under Tri–Cor's lease. The lease makes no exception for rents received in excess of the amount Tri–Cor was to pay under the lease. It says simply "the rents received." Given that property values tend to increase with time, it was clearly foreseeable that if Tri–Cor defaulted a subsequent tenant might pay a higher rent than Tri–Cor. Centerline could have insisted upon an express provision in the lease granting it any excess in rent received from a sublessee, but it did not. Centerline also could have terminated its lease with Tri–Cor and collected this additional rent on its own accord, but instead elected "to relet . . . the Premises *as the agent of and for the account of Tenant . . . .*" (emphasis added). Citing *C & M Developers, Inc. v. Berbiglia, Inc.,* 585

S.W.2d 176 (Mo.App. W.D.1979), Centerline now asks the court to write that provision for it, as a matter of law, on the ground that it would be "inequitable" to allow Tri–Cor to "profit" from defaulting on its lease.

First, we think Centerline's characterization of the situation is inaccurate. Paying $48,650 for ten months' rent on space it did not use is not "profiting." Second, *Berbiglia* provides Centerline with little support. In *Berbiglia* the court affirmed a jury verdict that did not give Berbiglia credit for the rent received from a substitute tenant in excess of the rent owed by Berbiglia under the lease. *C & M Developers, Inc.*, 585 S.W.2d at 187. But there the defaulting tenant sought a credit for rents received during months for which the landlord was not attempting to recover. *Id.* The court described it as follows: "Berbiglia was attempting to offset damages by obtaining credit for rentals inuring to C & M in the future during a period in which C & M was making no claim against Berbiglia for damages." *Id.* Here the situation is quite different. Tri–Cor is seeking a credit for rents paid during months that Centerline is seeking to recover.

■ Additionally, the lease here explicitly says that Tri–Cor is entitled to receive a credit for the "rents received" from the sublessee. There is nothing in the lease to suggest that only a portion of the rents received from the sublessee would be credited. We therefore hold that when the landlord relets spaces "as the agent of and for the account of" a defaulting tenant, the tenant is entitled to a credit for rents received over and above those it was obligated to pay under the lease unless the lease provides otherwise.

■ Tri–Cor's final point of error is that the trial court erred in awarding Landlord $8,739.27 in attorneys' fees and costs because the attorneys' fees were incurred seeking damages that were improperly given. Article 12 of the Lease provides that the Landlord was entitled to recover "reasonable attorney's fees and costs" incurred in the event of the Tenant's default. But because this appeal has substantially altered the outcome of this litigation, it will be necessary for the court to recalculate the attorneys' fees Centerline is entitled to on remand.

In its cross-appeal, Centerline argues that the court erred in refusing to award it certain real estate commissions it believes it is owed under the lease. Centerline seeks $5,838 as its pro rata share of the real estate brokerage commission to initially procure Tri–Cor as a tenant, and $3,756 as its pro rata share of a the real estate commission allegedly paid by it to the landlord's own company (Robern, Inc.) when he moved Alcide into the space vacated by Tri–Cor. Neither of these amounts was awarded by the trial court on the ground that "the damages sought by Plaintiff pertaining to the leasing commission are special damages ... [and] were not pled in Plaintiffs' petition."

Centerline argues the trial court here erred because it specifically pleaded damages based on the real estate commissions and that, even if it did not properly plead those damages, testimony of these damages was not objected to at trial and the issue was therefore properly before the court.

■ Centerline's petition essentially describes what the lease entitles them to. It does not specifically say that it is seeking damages for real estate commissions.[3]

---

**3.** There are only two points in the petition where the landlord might be thought to suggest that it was seeking to recover real estate commissions. The first is in paragraph 6 of

Without deciding whether this sufficiently pleads that Centerline was demanding real estate commissions, we believe the record makes clear that Tri–Cor was not surprised by Centerline's demand for real estate commissions and evidence supporting such an award of damages was admitted without objection. While Rule 55.19 requires that special damages "shall be specifically stated," this requirement has been leniently applied in circumstances where no surprise occurs and no objection is made to the evidence at trial. *See Koman v. Morrissey*, 517 S.W.2d 929, 932 (Mo.1974) ("when evidence is received without objection, the pleadings may be considered to have been amended to conform to the proof even though an amendment is not in fact made."). We therefore hold that the trial court erred in refusing to consider Centerline's demand for real estate commissions on the ground that they were improperly pleaded.

Because the record is not sufficiently developed on the issue of the reasonableness of commissions allegedly paid by Centerline to Robern for moving Alcide into Tri–Cor's former space, we remand to the trial court to determine this and for other proceedings consistent with this opinion.

PAUL J. SIMON and MARY K. HOFF, JJ., Concur.

---

its petition, where it says merely: "Pursuant to the terms and conditions of the Lease, specifically Article 12, if Defendant defaults on any provision of the Lease, it is obligated to pay outstanding rent due, all of Plaintiff's expenses associated with reletting the premises and all costs of collection including Plaintiff's reasonable attorney's fees, court costs, real estate commissions paid and any other costs." The second place is in the landlord's conclusion, where it prays for "all other costs associated with the collection of rents and subletting of the leased premises." Neither of these indicates clearly and specifically that the landlord is attempting to recoup real estate commissions.